**Karen Jones MORRIS, Plaintiff,**

v.

**WALLACE COMMUNITY COLLEGE–SELMA, et al., Defendants.**

**No. CIV. A. 98–0802–RV–C.**

United States District Court,
S.D. Alabama,
Northern Division.

Jan. 8, 2001.

---

William F. Patty, Beers, Anderson, Jackson, Hughes & Patty, P.C., Montgomery, AL, Henry Brewster, Stein and Brewster, Mobile, AL, for Karen Jones Morris.

Alice Ann Byrne, Margaret L. Fleming, Andrew Christman, Office of the Attorney General, State of Alabama, Montgomery, AL, for Wallace Community College Selma.

Alice Ann Byrne, Margaret L. Fleming, Office of the Attorney General, State of Alabama, Montgomery, AL, for Julius R. Brown.

Alice Ann Byrne, Office of the Attorney General, State of Alabama, Montgomery, AL, for Alabama Department of Postsecondary Education, State Board of Education, Fob James, Bradley E. Byrne, Jr., G.J. Higginbotham, Stephanie Bell, Ethel Hall, Willie J. Paul, David F. Byers, Jr., Sandra Ray, Mary Jane Caylor, Fred Gainous.

### MEMORANDUM OPINION AND ORDER

VOLLMER, Senior District Judge.

This matter is before the Court on the defendants' motion for summary judgment.

1. The plaintiff's motion to strike the motion for summary judgment and supporting brief, (Doc. 26), is **denied.** However, the defendants are advised that future breaches of the Court's procedural rules may not be overlooked.

2. In November 1998, the plaintiff filed an amended complaint. (Doc. 13). The Court granted the plaintiff's motion for leave to amend, (Doc. 14), in February 1999. (Doc. 15 at 6). The plaintiff then filed a second amended complaint in July 1999. (Doc. 16). Because the plaintiff failed either to seek leave of Court or to obtain written consent of the defendants, Fed.R.Civ.P. 15(a), the Court does not recognize it as a pleading in this case. Unless otherwise noted, all references herein to the "complaint" are to the amended complaint, Document 13, which appears substantially identical to the proposed second amended complaint.

(Doc. 20).[1] The parties have filed briefs and evidentiary materials in support of their respective positions. (Docs. 21–22, 29–30, 32, 52). After careful consideration of the foregoing materials as well as all other relevant materials in the file, the Court concludes that the defendants' motion for summary judgment is due to be granted in part and denied in part.

### CAUSES OF ACTION [2]

The plaintiff is a white female employed full-time since 1992 by the defendant George Wallace Community College (the "College") in its athletic department. At all relevant times, defendant Julius Brown was president of the College.[3] The plaintiff asserts the following causes of action:

- **Count One:** That the College discriminated against the plaintiff on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. (Doc. 35 at 1–2). In particular, the plaintiff alleges that the College:

 1. discriminatorily se[t] plaintiff's salary below comparable Blacks and/or males;[4]

 2. discriminatorily den[ied] plaintiff a promotion to athletic director on two different occasions;

3. As orally announced at the pretrial conference on January 3, 2000, the plaintiff's motion to dismiss all other defendants and to dismiss Brown as a defendant under certain counts, (Doc. 31), is **granted.** The following description incorporates the changes wrought by the plaintiff's voluntary dismissal.

4. In the amended pretrial document, the plaintiff asserts two challenges to her compensation: (1) that her initial salary, which continues to affect her salary today, was not enhanced based on her work history with the College and elsewhere; and (2) that she is paid less than similarly situated blacks and/or males performing the same or lesser work and possessing similar or lesser qualifications. (Doc. 35 at 4–9, 21–22). Any other challenge to compensation, including supplements, raised in the complaint but omitted from the amended pretrial document, is abandoned.

3. discriminatorily den[ied] plaintiff summer employment or offer[ed] her less summer employment (and therefore less compensation) than comparably-situated black males; and

4. discriminatorily den[ied] plaintiff other terms and conditions of employment including office equipment, membership in Leadership Selma, etc. than that offered to comparable Blacks and/or males.[5]

(*Id.* at 21).

- **Count Two:** That the College and Brown, in both his official and individual capacities, in like manner violated the plaintiff's equal protection rights in violation of the Fourteenth Amendment, for which the plaintiff seeks redress pursuant to 42 U.S.C. § 1983. (Doc. 35 at 2, 23–24).

- **Count Three:** That the College violated the Equal Pay Act, 29 U.S.C. § 206(a), with respect to the salary and summer employment issues identified in Count One. The plaintiff also alleges that the College retaliated against her for claiming she was paid less than similarly situated males, in violation of 29 U.S.C. § 215(a)(3), by denying her promotion to athletic director. (Doc. 35 at 2, 24–25).[6]

- **Count Four:** That the College violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88, in like manner as under Count One. (Doc. 35 at 2, 25).

- **Count Five:** That the College and Brown, in both his official and individual capacities, violated policies of the Alabama State Board of Education concerning summer employment, establishment of starting salaries, and sex or race discrimination. (Doc. 35 at 2–3, 25–26).[7]

## DETERMINATIONS OF UNCONTROVERTED FACT

The plaintiff become employed part-time by the College in its athletic department in 1989 and became a full-time employee in 1992. In 1996, the College's athletic director, Lothian Smallwood, retired and the College named Todd Alford, a white male, as athletic director in June 1996. Alford resigned effective January 17, 1997, and the College named Raji Gourdine, a black male, as athletic director in February 1997.

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 16, 1997. (Doc. 21, Exhibit 1). This action was instituted in state court on July 24, 1998. (Doc. 1).

## CONCLUSIONS OF LAW

The Court has subject matter over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The party seeking summary judgment bears "the ini-

---

5. Any terms, conditions or privileges of employment not expressly set forth in the amended pretrial document, including any encompassed within the term, "etc.," are abandoned.

6. The only retaliation claim asserted by the plaintiff arises under the Equal Pay Act.

7. Count Six, alleging that the College and Brown, in both his official and individual capacities, violated the Alabama Constitution's guarantee of equal protection in like manner as under Count Two, was asserted in both the amended complaint and the original pretrial document. (Doc. 13 at 21–22; Doc. 33 at 20). At the pretrial conference, counsel for the defendants noted that the Alabama Supreme Court recently "restate[d] what the Justices of this Court correctly declared in 1949, that 'there is no equal protection clause in the Constitution of 1901.'" *Ex parte Melof,* 735 So.2d 1172, 1186 (Ala.1999)(quoting *Opinion of the Justices,* 252 Ala. 527, 41 So.2d 775, 777 (1949)). The plaintiff subsequently filed an amended pretrial document abandoning Count Six. (Doc. 35 at 2–3, 25–26).

tial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 999 (11th Cir.1992) (internal citations and quotations omitted).

## I. Title VII.

The defendants argue that the plaintiff's claims are partially barred by the statute of limitations and that the plaintiff can establish neither a prima facie case nor pretext. They argue further that the plaintiff's failure to follow an established grievance procedure bars her Title VII claim. (Doc. 21 at 9–10, 26–39).

### A. Statute of Limitations.

A charge of discrimination must be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). The defendants argue that, because the plaintiff's EEOC charge was not filed until July 16, 1997, all of the plaintiff's claims are barred except her complaint that she was passed over for athletic director in favor of Raji Gourdine in early 1997. (Doc. 21 at 9–10). The plaintiff responds that all of the acts of which she complains are actionable under the theory of continuing violation. (Doc. 29 at 1–5).

The term "continuing violation" has been used as a blanket to cover at least two different situations, each with its own peculiar set of consequences. Properly speaking, a "continuing violation" is but a single violation that is continually or continuously manifested. *E.g., Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994)("The term 'continuing violation' also implies there is but one incessant violation . . . ."). When a true continuing violation exists, a charge of discrimination is timely if the discrimination is last manifested within 180 days before the charge is filed. Moreover, because only a single violation has occurred, the charge is timely with respect to all manifestations of the violation, including those occurring more than 180 days before the charge was filed, and the plaintiff may recover for these remote manifestations as well as for those occurring within 180 days of the charge. *E.g., id.* at 582 ("The term 'continuing violation' also implies . . . that the plaintiffs should be able to recover for the entire duration of the violation, without regard to the fact that it began outside the statute of limitations window.").

The term "continuing violation" has also been used to describe the situation in which a succession of similar but separate violations occurs. In this case, there is no true continuing violation but rather a series of discrete violations. Because each violation is separate, the charge is timely with respect to those violations that occurred within 180 days of the charge being filed but is untimely with respect to similar violations that occurred previously. *E.g., Knight v. Columbus*, 19 F.3d at 582 ("Instead of one on-going violation, this case involves a series of repeated violations of an identical nature. Because each violation gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event. Thus, the officer plaintiffs have a non-barred cause of action with

respect to any claims (i.e., any paychecks which omitted pay for overtime worked) that accrued within [the applicable statute of limitations].").

The common feature of these two situations is that both allow the plaintiff to pursue a charge—and ultimately, a lawsuit—even though the charge was not filed until more than 180 days after the commencement of the first violation. In the first situation, this is allowed because the original violation continues to occur and is never completed; in the second, it is because, while the original violation is completed, it is succeeded by another.

■ In contrast, when a single violation occurs more than 180 days before the charge is filed and is also completed more than 180 days before the charge is filed with no subsequent violation succeeding the first, no continuing violation theory, genuine or ersatz, will salvage the claim. Most notably, if the violation itself is completed, the fact that the consequences of the historical violation continue to be felt does not prolong the life of the violation for the duration of the consequences, *Carter v. West Publishing Co.*, 225 F.3d 1258, 1263 (11th Cir.2000), any more than the "dead hand" of a testator's will prolongs the testator's life after his demise.

### 1. Failure to promote.

■ A true continuing violation may arise in the promotion context if an "ongoing policy" results in a "continuous refusal" to promote. *Thigpen v. Bibb County, Georgia, Sheriff's Department*, 223 F.3d 1231, 1243 (11th Cir.2000)(discussing *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir.1992)). However, when the underlying policy, although continuously in effect, manifests itself only episodically, as when vacancies come open, the policy does not "continuously injure" the plaintiff and therefore does not support a true continuing violation theory. *Id.* (consent decree requiring half of all promotions to be given to eligible blacks "only manifests itself when an opportunity for a promotion arises and applicants according-

ly are evaluated," and each denial of promotion therefore constitutes a separate violation, such that only those occurring within the limitations period may be the subject of relief).

The plaintiff has not attempted to fall under the exception noted in *Thigpen.* Instead, she relies on *Roberts v. Gadsden Memorial Hospital*, 835 F.2d 793 (11th Cir.1988)("*Roberts I*"). The Court in *Roberts I* stated that "[i]t is only when a substantial nexus exists between a timely-filed claim and an otherwise time-barred claim that they may be viewed as constituting a single violation, part of which falls within the limitations period," allowing "recover[y] for previous acts of discrimination which would otherwise be time-barred." *Id.* at 800. The Court in *Roberts I* identified three factors for measuring this nexus as "whether the claims are related in subject matter, frequency, and permanence." *Id.* In its discussion, the *Roberts I* Court borrowed heavily from *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir.1983).

As a threshold matter, the portion of *Roberts I* on which the plaintiff relies was withdrawn by the panel shortly after its publication. *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549, 1551 (11th Cir.1988)("*Roberts II*"). Thus, it is incorrect to describe *Roberts I* as binding appellate precedent. *See, e.g., Blalock v. Dale County Board of Education*, 84 F.Supp.2d 1291, 1306 n. 16 (M.D.Ala.1999). However, a number of district courts have employed the *Roberts I* analysis, presumably on the implicit assumption that it fairly represents the tack the Eleventh Circuit would take if confronted with the issue. Thus, and because the defendants raise no objection to applying *Roberts I* but instead argue that the plaintiff cannot satisfy its requirements, the Court utilizes *Roberts I* as a framework for assessing the plaintiff's assertion of a continuing violation.

■ With respect to the relatedness of the plaintiff's promotion claims, both incidents involve a failure to promote by the

same decision maker to the same position. With respect to frequency, while two incidents may constitute a continuing violation, see *Roberts I*, 835 F.2d at 801, two is at the extreme lower end of the frequency scale.

The "most important" factor, *Roberts I*, 835 F.2d at 801, is permanence. The Fifth Circuit in *Berry* described the permanence inquiry as follows: "Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" 715 F.2d at 981. Permanence is most likely to be lacking, and a continuing violation therefore most likely to be found, when "the claim at issue is not based on discrete acts, but is based on an ongoing pattern of offensive conduct." *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1271–72 (M.D.Ala.1998). The archetypal form of continuing violation under the *Berry–Roberts I* analysis is therefore racial or sexual hostile work environment, in which the existence of a claim may not be recognized until a significant number of discriminatory acts have occurred, management alerted, and no corrective action taken. *E.g., Malone v. K–Mart Corp.*, 51 F.Supp.2d 1287, 1301–02 (M.D.Ala.1999); *England v. Compass Bank*, 1999 WL 1825225 at 5 (N.D.Ala. 1999).

The plaintiff has not explained how she could have viewed the selection of Alford as anything other than permanent or how she could have believed his continued occupancy of the athletic director post in her stead was made possible only by fresh daily infusions of discriminatory intent. Indeed, the plaintiff does not apply *Roberts I* to her 1996 promotion claim at all. The Court concludes that the plaintiff's

promotion claims do not encompass a true continuing violation and that the plaintiff's Title VII claim for race and sex discrimination concerning the 1996 selection of Alford as athletic director is barred by the statute of limitations.[8]

## 2. Summer contracts.

■ The plaintiff alleges she was denied summer contracts in 1993 through 1995 and was awarded less than full-load summer contracts in 1996 through 1999. She alleges that each year a similarly situated black and/or male received a superior summer contract. (Doc. 29 at 4). The summer contracts for 1993 through 1996 were denied or awarded more than 180 days before the plaintiff's July 1997 charge.

With respect to relatedness, three of the four potentially time-barred claims involve denials of contracts, while each of the timely claims involves a contract actually entered. (Doc. 21 at 4). Thus, there is some inconsistency between the plaintiff's timely and potentially untimely claims. See *Roberts I*, 835 F.2d at 800–01 (a failure to consider for promotion is "incongruent" with an offer of promotion rejected because of its unfair terms). With respect to frequency, the plaintiff challenges seven consecutive summer contracts. Again, the plaintiff offers no explanation of how the facially discrete employment action of denying her a summer contract could tilt the permanence factor in her favor. Accordingly, the Court concludes, using the *Roberts I* analysis urged by the plaintiff, that her Title VII claim for discrimination in summer contracts is barred by the statute of limitations with respect to the years 1993 through 1996.

## 3. Compensation.

The plaintiff assumes that the *Roberts I* analysis applies to claims of discrimination

8. While "prohibited discrimination in promotions and transfers may often be a continuing violation," *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1570 (11th Cir.1987), a review of the authorities cited reflects that this prop-

osition holds true only in the context of an ongoing discriminatory policy or system—a prong of the continuing violation doctrine on which the plaintiff does not rely.

in compensation. (Doc. 29 at 3–4). The plaintiff cites, and the Court is aware of, no support for such a proposition. Instead, binding precedent both before and after *Roberts I* and *Roberts II* has treated compensation claims as presenting a series of violations, each one carrying its own limitations period. *E.g., Knight v. Columbus,* 19 F.3d at 581 ("Each failure to pay overtime constitutes a *new* violation of the FLSA.")(emphasis in original); *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir.)(" 'It is well settled that "[a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period . . . ." ' ")(quoting earlier cases), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). The plaintiff offers no rationale for ignoring this precedent. Accordingly, the plaintiff's Title VII claim for discrimination in compensation is timely only with respect to those periods within 180 days preceding her charge, that is, on or after January 17, 1997.

### 4. Other terms, conditions and privileges of employment.

The defendants have not addressed the timeliness of the plaintiff's residual claims. The record reflects that the plaintiff was first denied sponsorship in Leadership Selma in the summer of 1997, (Doc. 30 at 26; Exhibit 6 at 238–39, 242), and that the plaintiff's office appointments have been allegedly inferior since her arrival on campus in 1989. (Doc. 30, Exhibit 22 at 124–27). On the present record and argument, the Court cannot conclude that the plaintiff's residual claims are untimely.

### B. Exhaustion of Internal Remedies.

The defendants assert that the College maintains both a non-discrimination policy and an internal grievance procedure for processing employment complaints, including complaints of discrimination. (Doc. 21, Exhibits 3–4). The defendants further assert that the plaintiff was aware of the grievance procedure yet failed to employ it with respect to any of her present claims of discrimination. They conclude that the plaintiff's failure operates to bar her present Title VII claim. (Doc. 21 at 26–31).

In *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court held that the employer is necessarily liable for actionable sexual harassment by its supervisor that results in a "tangible employment action" being taken against the employee. *Id.* at 807–08, 118 S.Ct. 2275. The Court further held that, when no tangible employment action is taken, the employer generally is liable but may interpose as an affirmative defense that (1) the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 808, 118 S.Ct. 2275; *accord Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 762–65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The defendants argue that *Faragher* and *Ellerth* apply to the instant case.

There are two threshold hurdles the defendants must overcome in presenting this argument. First, *Faragher* and *Ellerth* were sexual harassment cases, and the present case does not involve claims of sexual, or other, harassment. Second, by its terms the affirmative defense recognized in *Faragher* and *Ellerth* is available only when the plaintiff has not been subject to a "tangible employment action."

The defendants have not addressed the first obstacle to their position, but a review of *Faragher* and *Ellerth* reveals that the Supreme Court did not embrace a generic defense applicable in all situations but rather carved out a unique defense designed to meet the peculiar exigencies of hostile work environment harassment. An examination of agency principles satisfied the Court that an employer generally should be held liable for a hostile work environment created by its supervisor, but a prophylactic rule of liability would have been in tension with the Court's prior

holding in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that an employer is not automatically liable for a hostile work environment created by its supervisor. After considering and rejecting other methods of resolving this conflict, the Court settled upon recognition of the affirmative defense outlined above. While the defense honors the broad principle that plaintiffs should take reasonable steps to avoid or mitigate damages, its scope is restricted to claims of harassment. Thus, for example, the Eleventh Circuit has repeatedly invoked *Faragher* and *Ellerth* but has done so exclusively in the harassment context.[9] Absent cogent argument from the defendants, the Court cannot conclude that the affirmative defense articulated in *Faragher* and *Ellerth* applies outside the harassment context.

■ Moreover, the affirmative defense applies only when the plaintiff has not been subjected to a "tangible employment action"; if a tangible employment action has occurred, the employer is necessarily liable for the actionable harassment of its supervisor. *Faragher v. City of Boca Raton*, 524 U.S. at 807–08, 118 S.Ct. 2275. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257.

The defendants do not even suggest that the College's alleged discrimination in compensation and in awarding summer contracts fail to attain the "tangible employment action" threshold. Nor do they argue that the College's conduct concerning other terms, conditions and privileges of employment alleged by the plaintiff does not constitute tangible employment action. Instead, the defendants restrict their focus to the plaintiff's claim that she was not promoted to athletic director. (Doc. 21 at 27–29).

■ In particular, the defendants argue that athletic director "is not a position, nor a promotion—it is merely a title which provides a modest supplemental salary increase—if the President of the college desires to provide such an increase." (Doc. 21 at 28). The potential for a pay increase, however, would appear of itself to mark the athletic director assignment as a promotion and therefore as a tangible employment action. Moreover, a transfer may constitute an adverse employment action "if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County, Georgia Board of Education*, 231 F.3d 821, 829 (11th Cir.2000)(citing *Doe v. Dekalb County School District*, 145 F.3d 1441, 1448 (11th Cir.1998)). The flip side of this coin would appear to be that a failure to transfer may constitute an adverse employment action if it entails an increase in pay, prestige or responsibility. *Dudley v. Wal–Mart Stores, Inc.*, 931 F.Supp. 773, 805 (M.D.Ala.1996). The defendants admit that the athletic director has increased responsibilities and, absent argument from the defendants, the Court cannot conclude that the title "athletic director" carries no heightened prestige above that of "coach" or "instructor." In short, the defendants have failed to establish that assignment as athletic director cannot ever, or would not under the relevant circumstances of this action, constitute a tangible employment action.

In summary, the defendants are not entitled to partial summary judgment on the

9. See *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 2000 WL 1752177 (11th Cir. Nov.29, 2000); *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290 (11th Cir.), *cert. denied*, —— U.S. ——, 121 S.Ct. 303, 148 L.Ed.2d 243 (2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068, 120 S.Ct.

1674, 146 L.Ed.2d 483 (2000); *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417 (11th Cir.1999); *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361 (11th Cir.1999); *Llampallas v. Mini–Circuits Lab, Inc.*, 163 F.3d 1236 (11th Cir.1998), *cert. denied*, 528 U.S. 930, 120 S.Ct. 327, 145 L.Ed.2d 255 (1999).

grounds that the plaintiff failed to invoke the College's grievance procedure.

## C. Prima Facie Case.

The parties agree that the plaintiff relies on circumstantial evidence to establish her claims of race and sex discrimination and that the *McDonnell Douglass—Burdine* paradigm therefore applies.

### 1. Failure to promote.

■ The parties agree that the plaintiff's prima facie case requires her to show: (1) that she belongs to a protected class; (2) that she applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open or was filled by a person outside the protected class. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir.1999). The defendants challenge only the second of these elements. (Doc. 21 at 32).[10]

The defendants make three separate challenges to the plaintiff's ability to satisfy the second element: (1) that athletic director is not a "position" but an "assignment"; (2) that the College did not accept applications for athletic director; and (3) that the plaintiff was not qualified to be athletic director. (Doc. 21 at 32–33). With respect to the first argument, there is evidence that the defendants themselves described athletic director as a "position." (Doc. 30, Exhibit 2 at 24; Exhibit 23 at GWCC 824, 1128, 1132). Moreover, as discussed in Part I.B., the athletic director does or may receive additional pay, responsibilities and prestige, hallmarks of a promotion.

■ With respect to the second argument, the defendants acknowledge that an athletic director was named in 1996 and again in 1997; the College cannot avoid liability for unlawful discrimination in that selection process by the simple expedient of naming athletic directors without first accepting applications. "[W]hen an employer uses such informal methods [as word of mouth to identify candidates for a position] it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984). This principle applies when, as here, the employer "does not post openings or take applications for positions." *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir.1992), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993). The defendants, who considered the plaintiff in connection with the June 1996 opening, have not shown that the plaintiff could not reasonably have been interested in the January 1997 opening. Moreover, the defendants admit that the plaintiff expressed interest in becoming athletic director on January 17, 1997, the effective date of Alford's resignation. (Doc. 21 at 4–5; Exhibit 7 at 1).

■ With respect to the third argument, the defendants assert that the qualifications for athletic director are nothing more than whatever Brown deems them to be at any given time. (Doc. 21 at 33). The defendants assert that Brown made "administrator rather than a coach" the criterion for the 1997 selection, (*id.*), yet they concede that Brown's first choice was not an administrator but a chemistry teacher. (Doc. 32 at 7–8); *see also* Part II.D.1.b. This inconsistency is itself sufficient to present a fact question as to what the defendants truly viewed as the qualifications for athletic director. Since the qualifications themselves are in doubt, the defendants *cannot on motion for summary judgment establish as a matter of law that the plaintiff was unqualified.*[11]

10. The defendants also challenge the third element, but only on the redundant grounds that the plaintiff was not qualified. (*Id.*)

11. Elsewhere in their brief, the defendants argue that Brown also considered the plaintiff's reliability, trustworthiness and loyalty. They do not, however, argue that these characteristics rendered the plaintiff *not* qualified but only that they rendered her *less* qualified than the selectee. (Doc. 21 at 26)(character-

### 2. Compensation.

█ With respect to compensation, "[t]he plaintiff establishes a prima facie case of sex discrimination under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992). The defendants question generally whether the plaintiff can establish a prima facie case, (Doc. 21 at 33–35), but they fail to address these elements of the prima facie case and therefore have not carried their initial burden on motion for summary judgment.[12]

### D. Pretext.

The defendants argue that the plaintiff cannot establish that their articulated legitimate, non-discriminatory reasons for the challenged employment actions are a pretext for discrimination. (Doc. 21 at 7, 22, 37–39).

### 1. Failure to promote.

█ The defendants assert a combination of objective and subjective reasons as their legitimate, nondiscriminatory reasons for not naming the plaintiff as athletic director in 1997. First, the defendants assert that Brown, for reasons set forth in his affidavit, desired an administrator and not a coach. (Doc. 32 at 6–7). Second, the defendants assert that Brown considered the plaintiff's "history of being uncooperative with the ... administration, of scheduling a softball game without approval, of failing to follow travel approval procedures, of attempting to alter her employment contract, and of often speaking unfavorably of the ... administration" and concluded that this history reflected poorly on the plaintiff's "reliability, trustworthiness and loyalty." (Doc. 21 at 36).

istics prevented the plaintiff from being considered the "best-suited" person). An assessment of relative qualifications, however, is not part of the prima facie case. *Walker v. Mortham*, 158 F.3d 1177, 1186–88, 1192–93 (11th Cir.1998) (rejecting *Perryman v. Johnson Products Co.*, 698 F.2d 1138 (11th Cir.1983)),

### a. Subjective considerations.

The plaintiff suggests that "Brown's decisions throughout were based on vague and general reasons" and that their subjectivity eases or even erases her burden of producing evidence of pretext in order to avoid summary judgment. (Doc. 29 at 17–18). While prior cases had suggested that a subjective criterion "cannot be relied upon by an employer seeking to defeat the plaintiff's prima facie case," *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir.1998), the Eleventh Circuit has recently clarified that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000)(en banc). Because a subjective reason based on objective facts offers the plaintiff a meaningful opportunity to challenge the subjective reason, there is no call to lower the plaintiff's burden of establishing a genuine issue of material fact as to pretext. *See id.* at 1034 & n. 25, 1036.

The issue thus becomes whether the defendants have offered a "clear and reasonably specific factual basis" for Brown's articulated subjective reasons. His affidavit offers no particulars supporting any of the plaintiff's articulated flaws and instead vaguely directs the reader to "[s]ee exhibits." (Doc. 21, Exhibit 2 at 3). No exhibits, however, are attached to Brown's affidavit. Of the thirteen exhibits submitted by the defendants in support of their motion for summary judgment, only one bears any conceivable relationship to Brown's articulated reasons. The College's response to the plaintiff's EEOC charge, (Doc. 21, Exhibit 6), signed by Brown, forms the template from which his

*cert. denied*, 528 U.S. 809, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999).

**12.** The defendants do not question whether the plaintiff can establish a prima facie case with respect to the other employment actions she challenges.

affidavit was later drawn, much of it verbatim. The EEOC response refers to exhibits 3–7 as supporting the College's legitimate, nondiscriminatory reasons, (*id.* at 5), but no such exhibits are included in the defendants' evidentiary submission on motion for summary judgment.

The defendants are therefore left to rely exclusively on the text of the College's response to the EEOC charge to satisfy the requirement of a "clear and reasonably specific factual basis." The response's brief descriptions of the contents of the missing exhibits and the incidents to which they relate do not obviously satisfy the standard established by the Eleventh Circuit. Assuming without deciding that they do so, the plaintiff has presented sufficient evidence of pretext to withstand summary judgment.

First, Brown in his deposition identified only a single reason for selecting Alford in June 1996: that he "had a more cooperative attitude" than the plaintiff. (Doc. 30, Exhibit 6, at 201–02). Second, Smallwood testified that, when Brown sought Smallwood's opinion as to the relative qualifications of the College's three coaches to succeed Smallwood as athletic director and Smallwood identified the plaintiff as the most qualified, Brown expressed no dissatisfaction with the plaintiff other than her disagreement with Brown's suggestion to establish a racial quota for the cheerleading squad coached by the plaintiff—without any reference to the incidents he now asserts underlay his decision. Nor, according to Smallwood, did Brown on any other occasion criticize the plaintiff for any other reason. (Doc. 30, Exhibit 4 at 2, 3–4). Third, despite the plaintiff's allegedly poor history, she has never received a written reprimand, and her annual evaluations have all been average or above. (*Id.,* Exhibit 6 at 250; Exhibit 7, Vol. II at 79). Fourth, despite the plaintiff's alleged lack of reliability, trustworthiness and loyalty, Brown simultaneously tapped her as the presumptive assistant athletic director,[13]

itself an administrative post requiring the plaintiff to "assist" the athletic director in fulfilling any of the athletic director's functions as requested by the athletic director. (Doc. 21, Exhibit 7 at 2).

### b. Objective considerations.

The defendants also argue that Brown desired someone who was an administrator and not a coach to be athletic director. As noted previously, however, Brown first offered the athletic director job to Karl Smith, a chemistry teacher who was not an administrator. The defendants attempt to overcome this awkward state of affairs by pointing out that, while Smith was not an administrator, neither was he a coach. (Doc. 32 at 7–8). This explanation, however, is inadequate because Brown did not identify his non-discriminatory qualification as "non-coach" but as "an administrator, rather than a coach." (Doc. 21, Exhibit 2 at 2; Exhibit 6 at 2; Exhibit 7 at 1, 2; Exhibit 10 at 1, 2). Brown continued that "the duties and responsibilities [of athletic director] are administrative in nature and *require* the attention of an administrative employee ...." (*Id.,* Exhibit 2 at 2 (emphasis added)). The asserted qualification was not an "either ... or" but a "both ... and." Brown did ultimately name as athletic director an individual meeting his articulated qualification. However, that he first offered the job to one who did not meet his stated qualification raises an inference that the defendants' articulated reason was not their true reason. Moreover, there is evidence that naming an administrator as athletic director required a reorganization approved by the Chancellor of the Postsecondary Education Department, (Doc. 21, Exhibit 7), yet the defendants named Gourdine as acting athletic director in February 1997, over a year before the Chancellor approved the reorganization. (*Id.,* Exhibit 10).

Without intimating that no other evidence of pretext is in the record, the Court

---

13. Brown told the plaintiff in January 1997 that she would receive "first consideration" for assistant athletic director. (Doc. 21, Exhibit 6 at 2).

concludes that the foregoing establishes a genuine issue of material fact as to whether the defendants acted with a discriminatory intent in failing to name the plaintiff as athletic director. *See generally Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### 2. Compensation.

 As noted, the plaintiff argues discrimination in failing to enhance her starting salary to reflect prior work experience and in paying her less than similarly situated blacks and/or males.

The defendants assert that part-time work with the College is not a consideration in setting initial salaries, that the plaintiff identified no other prior work experience, and that the work history to which the plaintiff has testified in this litigation would not have prompted an upward revision of her salary. (Doc. 21 at 3–4, 34–35). The plaintiff has identified no evidence sufficient to create a genuine issue of material fact concerning the defendants' articulated reasons.

First, the plaintiff listed no prior work experience on her application. (Doc. 21, Exhibit 12). She has identified no comparators that received a salary enhancement for having no work history, and she has identified no policy requiring the granting

of such an enhancement to new employees with no prior work experience.

The plaintiff's only paid work in education, as reflected in her deposition testimony, is six to nine days of substitute teaching at the kindergarten level. Her only unpaid work in education is 20 to 24 days of substitute teaching at the pre-kindergarten level and 50 to 75 hours teaching a Cub Scout pack. She has no past coaching experience, and her only physical education experience is teaching racquetball, Nautilus and swimming at the YMCA, aerobics at church and swimming at home. She has no other work experience outside the College. (Doc. 21, Exhibit 5 at 195–202, 209, 316–17). The plaintiff has identified no comparators that received a salary enhancement for anything remotely resembling her minimal employment history,[14] and she has identified no policy requiring the granting of such an enhancement for one with her work history.

Finally, the plaintiff has identified no policy requiring a salary enhancement for part-time work at the College or elsewhere, and on the contrary insists that policy forbids such credit. She identifies only a single comparator who allegedly received salary credit for prior part-time work at the College, but she has presented no evidence to support the contention.[15]

14. Of the plaintiff's three comparators, Marvin Hobson had 13 years experience teaching at a private university, John Williams had approximately 13 years coaching experience at the college level, and Otis Hughley had, inter alia, two seasons of European professional coaching, a year of high school coaching, and six months as personnel director of a community college. (Doc. 30, Exhibits 9, 12, 14). Even if the plaintiff is correct that some of this experience should not have been considered in light of State Board of Education policies, her experience falls so woefully short of theirs that any violation of policy cannot support an inference of discrimination, any more than awarding an 'A' to a student scoring an 85 supports an inference of discrimination against a student scoring a 50 but not receiving the same letter grade.

15. The College's pay scale within a rank consists of steps, beginning with step 0, with no

relevant work experience justifying step 0. Each year's relevant work history translates into a one-step increase. Thus, Hobson's 13 years at a private university would have caused him to be started at step 13, yet he was started at step 15. The plaintiff assumes that Hobson must have received credit for his part-time experience at the College to make up the difference, (Doc. 30 at 11), but she provides no evidence that this occurred. (Contrary to the plaintiff's representation, vice-president McConnell did not testify that Brown gave Hobson credit for part-time work; rather, he testified that he did not recall whether this occurred. (Doc. 30, Exhibit 17, Vol. II at 101).) In fact, Hobson began his career by working a year as a post-graduate teaching associate and another year as a postgraduate research assistant, (Doc. 30, Exhibit 12), supplying the "missing" two years of credit.

In summary, the defendants are entitled to dismissal of the plaintiff's Title VII compensation claim concerning failure to enhance her salary due to past work experience.[16] However, because they have not addressed the plaintiff's claim that she was paid less than similarly situated blacks and/or males, they have not carried their initial burden on motion for summary judgment with respect to this aspect of the plaintiff's compensation claim.

### 3. Summer contracts.

The defendants have not argued that the plaintiff cannot establish a prima facie case of race or sex discrimination in the award of summer contracts. Nor have they attempted to articulate any legitimate, nondiscriminatory reason that the plaintiff was awarded less than a full load contract each summer from 1997 through 1999 while black and/or male coaches were awarded more favorable contracts.[17] Absent a legitimate, nondiscriminatory reason, the plaintiff's prima facie case alone suffices as evidence of intent to discriminate. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### 4. Other terms, conditions and privileges.

The defendants, having failed to address this aspect of the plaintiff's claim, have not met their initial burden on motion for summary judgment.

16. The order and allocation of proof governing Title VII claims based on circumstantial evidence applies equally to similar claims of employment discrimination in violation of the equal protection clause raised pursuant to Section 1983. *Busby v. City of Orlando,* 931 F.2d 764, 777 (11th Cir.1991); *Lee v. Conecuh County Board of Education,* 634 F.2d 959, 962–63 (5th Cir.1981). Therefore, the plaintiff's parallel claim under Section of race and sex discrimination in failing to enhance her salary based on past work experience is similarly due to be dismissed.

## II. Section 1983.

The defendants argue that portions of this claim are barred by the statute of limitations, that the complaint fails to satisfy the "heightened pleading" standard, that the College and Brown in his official capacity are protected by Eleventh Amendment immunity, and that Brown in his individual capacity is protected by qualified immunity.

### A. Statute of Limitations.

The plaintiff's Section 1983 claim is governed by a two year statute of limitations. *Lufkin v. McCallum* 956 F.2d 1104, 1106 (11th Cir.), *cert. denied,* 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992); *Anderson–Free v. Steptoe,* 970 F.Supp. 945, 953 (M.D.Ala.1997). Because this action was filed on July 24, 1998, the defendants argue the action is barred with respect to all claims other than failure to promote. (Doc. 21 at 10–11).

The continuing violation doctrine applies to actions brought under Section 1983. *Thigpen v. Bibb County, Georgia, Sheriff's Department,* 223 F.3d 1231, 1243 (11th Cir. 2000). Therefore, for the reasons set forth in Part I.A., the defendants are entitled to summary judgment with respect to any claim of discrimination in compensation preceding July 24, 1996. In addition, the defendants are entitled to summary judgment with respect to any claim of discrimination in summer contracts for the years 1993 through 1996.[18] Finally, the plaintiff's 1996 promotion claim is barred be-

17. As noted in Part I.A.2, the plaintiff's claims regarding previous summer contracts are time-barred.

18. The plaintiff's 1996 summer contract was executed on June 21, 1996 for a period commencing June 10, 1996, more than two years before she filed suit. (Doc. 30, Exhibit 9 at GWCC 48–49). While any challenge to her compensation under the summer contract is not barred with respect to the period commencing July 24, 1996, all other claims, including any claim concerning her load, are barred because they accrued prior to July 24, 1996.

cause she alleges that Alford was chosen as athletic director in June 1996. (Doc. 13 at 6).

## B. Heightened Pleading.

As noted, the complaint was filed July 24, 1998, and the case was removed to federal court on August 7, 1998. (Doc. 1). While the defendants asserted a heightened pleading affirmative defense in their answer, (Doc. 2 at 11), they filed neither a motion to dismiss nor a motion for more definite statement. Instead, the defendants delayed until after the close of discovery to seek relief on this ground. Were the complaint truly as incomprehensible as the defendants now assert, (Doc. 21 at 11–13), so as to impede Brown's ability to seek or obtain qualified immunity, one could reasonably expect them to have championed this argument at an early stage. *See, e.g., Anderson v. District Board of Trustees,* 77 F.3d 364, 366 (11th Cir.1996)(a Section 1983 defendant faced with an unintelligible complaint "is not expected to frame a responsive pleading [but] is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement").

At any rate, the Court's review of the complaint, (Doc. 13), does not support the defendants' colorful description of it as "simply a laundry list of alleged 'facts' interspersed with vague and disjointed demands for relief." (Doc. 21 at 12). The Court finds the complaint to be easily intelligible, a far cry from the "shotgun pleadings" at issue in the cases on which the defendants rely. Significantly, each count does not simply incorporate by reference all preceding paragraphs but includes a synopsis of the allegations germane to the particular count; nor is more than one legal theory asserted in a single count. Moreover, the plaintiff's motion to dismiss eliminates all but two defendants and eliminates Brown as a defendant under several counts. (Doc. 31). Finally, the pretrial document and amended pretrial document, further refining the plaintiff's allegations, have now been filed with no suggestion from the defendants that the plaintiff's allegations remain a mystery.

In summary, application of the heightened pleading standard does not justify dismissal of the complaint of any portion of it.

## C. Eleventh Amendment.

 States are immune from suit in federal court by virtue of the Eleventh Amendment. This immunity extends as well to entities having a sufficiently close connection to the state that a suit against the entity is effectively one against the state itself. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Congress did not abrogate the states' sovereign immunity by enacting Section 1983. *Quern v. Jordan,* 440 U.S. 332, 340–45, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *accord Robinson v. Georgia Department of Transportation,* 966 F.2d 637, 640 (11th Cir.), *cert. denied,* 506 U.S. 1022, 113 S.Ct. 660, 121 L.Ed.2d 586 (1992).

### 1. The College.

The plaintiff does not challenge the College's entitlement to Eleventh Amendment immunity. Instead, she suggests she has "mooted" the issue "by moving to amend her complaint and dismissing any section 1983 monetary claim against a state entity or state officials sued in their official capacity." (Doc. 29 at 6). The Court, finding no such motion in the file, deems the foregoing statement to constitute such a motion and **grants** the plaintiff's motion. Accordingly, the plaintiff's claim under Count Two for monetary relief against the College and Brown in his official capacity is dismissed on the plaintiff's motion.[19]

---

**19.** The plaintiff's subsequent statement in the amended pretrial document that "[t]he College is subject to all … damages except for punitive damages" under Count Two, (Doc. 35 at 24), being contrary to the plaintiff's voluntary dismissal of her claim for monetary relief against the College under Count Two, is ineffectual surplusage.

 The plaintiff's action does not, however, "moot" the Eleventh Amendment inquiry, because the Eleventh Amendment bars equitable relief against the state just as surely as it bars monetary relief. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 120, 104 S.Ct. 900 ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting *any* relief on that claim.")(emphasis added); *id.* at 100–01, 104 S.Ct. 900 ("This jurisdictional bar applies regardless of the nature of the relief sought," including " 'demands for the enforcement of equitable rights and the prosecution of equitable remedies' ") (quoting *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 78 L.Ed. 145 (1933)). Moreover, as discussed in Parts II.C.2, V.A.1 and V.B., the ramifications of the College's Eleventh Amendment immunity extend well beyond the College's amenability to suit under Section 1983.

 Whether an entity other than the state itself partakes of the state's Eleventh Amendment immunity depends on whether it is an "arm of the state." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "Whether [the College] is an arm of the state protected by the Eleventh Amendment 'turns on its function and character as determined by state law.' ... Factors that bear on this determination include the definition of 'state' and 'political subdivision,' the state's degree of control over the entity, and the fiscal autonomy of the entity." *Fouche v. Jekyll Island—State Park Authority*, 713 F.2d 1518, 1520 (11th Cir.1983)(quoting *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981)). A fourth factor, sometimes subsumed within the "fiscal autonomy" factor, is "who is responsible for judgments against the entity." *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir.1984). These factors were most recently applied by the Eleventh Circuit in *Miccosukee Tribe v. Florida State Athletic Commission*, 226 F.3d 1226, 1231–34 (11th Cir. 2000).

 Although the defendants have not applied this factor analysis, the Court is satisfied that the College is entitled to Eleventh Amendment immunity. *See generally Powers v. CSX Transportation, Inc.*, 105 F.Supp.2d 1295, 1299–1301 (S.D.Ala.2000)(applying the factor analysis to the Alabama Department of Transportation). First, Alabama's state law sovereign immunity extends to community colleges such as the College.[20] Second, the life of the College is heavily regulated by the State Board of Education,[21] itself presumptively an arm of the state possessing Eleventh Amendment immunity. Ala. Code § 16–60–110.4.[22] Third, the College is further regulated by the Chancellor of the Postsecondary Education Department. *Id.* § 16–60–111.5. Fourth, the College depends heavily on the state for funding, *id.* §§ 16–60–111.4(4), (6), –111.5(6), has limited ability to borrow money, *id.* § 16–60–113, and apparently may not issue bonds. *See id.* § 16–60–90 (establishing a separate authority to issue bonds for construction and equipment). Fifth, the plaintiff has made no showing that any monetary relief

**20.** *Ex parte Craft*, 727 So.2d 55, 58 (Ala.1999); *Williams v. John C. Calhoun Community College*, 646 So.2d 1, 2 (Ala.1994); *Shoals Community College v. Colagross*, 674 So.2d 1311, 1313–14 (Ala.Civ.App.1995), *cert. denied*, 674 So.2d 1315 (Ala.1996).

**21.** Alabama has adopted a statutory scheme addressing junior colleges and trade schools, *see* Ala.Code §§ 16–60–110 to –114, which the Alabama courts have applied to community colleges. *See Ward v. Wortham*, 706 So.2d 1238, 1238 (Ala.Civ.App.1997); *McLeod v. Beaty*, 718 So.2d 673, 680 (Ala.Civ.App.1996), *rev'd on other grounds*, 718 So.2d 682 (Ala. 1997); *Williams v. Ward*, 667 So.2d 1375, 1376 (Ala.Civ.App.1994), *cert. denied*.

**22.** *See United States v. Alabama*, 791 F.2d 1450, 1453, 1457 & n. 9 (11th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987); *Shuford v. Alabama State Board of Education*, 968 F.Supp. 1486, 1515 (M.D.Ala.1997).

awarded against the College would not come from the state treasury. Finally, other federal courts have held or assumed that Alabama community colleges possess Eleventh Amendment immunity.[23]

▌ In summary, the College partakes of the state's Eleventh Amendment immunity, which immunity bars the plaintiff's Section 1983 claim against the College in its entirety.[24]

### 2. Brown—Official Capacity.

▌ A suit against a state officer in his official capacity is effectively one against the state and equally offends the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169–70, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Such an action may not proceed to the extent it seeks to recover monetary damages, including retroactive monetary damages incident to injunctive relief. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102–03, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). However, such an action may proceed to the extent the plaintiff seeks appropriate prospective equitable relief. *Id.*

As noted, the plaintiff has dismissed "any section 1983 monetary claim against ... state officials sued in their official capacity." (Doc. 29 at 6). The plaintiff's Section 1983 claim against Brown in his official capacity survives only to the extent the plaintiff seeks appropriate prospective equitable relief.

### D. Qualified Immunity.

▌ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzger-*

ald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

> [T]his Court [has] established a two-step analysis to be used in applying the *Harlow* test: the defendant government official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred," and then the burden shifts to the plaintiff to demonstrate that the defendant "violated clearly established constitutional law."

*Sammons v. Taylor,* 967 F.2d 1533, 1539 (11th Cir.1992)(quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)).

### 1. Discretionary authority.

▌ "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority.... If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir.1998)(emphasis added). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id.*

▌ For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when " 'his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)(quoting *Barker v. Norman,* 651 F.2d 1107,

**23.** *Edwards v. Wallace Community College,* 49 F.3d 1517, 1524 (11th Cir.1995); *LaFleur v. Wallace State Community College,* 955 F.Supp. 1406, 1421–22 (M.D.Ala.1996).

**24.** The College may not be retained as a party defendant to the plaintiff's claim under Section 1983 for the purpose of awarding attor-

ney's fees under 42 U.S.C. § 1988. "[W]here a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

1121 (5th Cir.1981)). This definition encompasses two important points.

■ First, discretionary *authority* does not require the performance of a discretionary *act;* even a ministerial act is within the defendant's discretionary authority if the *Rich v. Dollar* test is satisfied. *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994)(if the defendants were acting pursuant to their job functions and within the scope of their authority, it does not matter "whether such actions be characterized as ministerial or discretionary in nature"); *McCoy v. Webster,* 47 F.3d 404, 407 (11th Cir.1995)("discretionary authority" includes "actions that do not necessarily involve an element of choice").

■ Second, "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but " 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.' " *Harbert International v. James,* 157 F.3d at 1282 (quoting *In re: Allen,* 106 F.3d 582, 594 (4th Cir.1997)). For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners. *Id.* (describing *Jordan v. Doe,* 38 F.3d at 1566).

The quantum and quality of evidence necessary to meet the defendant's burden "vary in proportion to the degree of discretion inherent in the defendant's office." *Barker v. Norman,* 651 F.2d at 1125. In some cases, the very nature of the job will make it obvious that the defendant acted within his discretionary authority. *See, e.g., Adams v. St. Lucie County Sheriff's Department,* 962 F.2d 1563, 1568 (11th Cir. 1992)("It is axiomatic that a law enforcement officer has the discretionary authority to pursue and apprehend a fleeing suspected offender."), *vacated on other grounds,* 982 F.2d 472 (11th Cir.1993). The office of president of a post-secondary educational institution presumptively connotes wide-ranging authority in personnel matters, an authority confirmed by statute. Ala.Code § 16–60–111.7 (president is delegated the authority to appoint his faculty and staff).

■ The defendants also offer Brown's affidavit for the proposition that, "[a]s President, I have the authority to hire, fire, promote, assign job duties and tasks, and otherwise direct employment needs of [the College]." (Doc. 21, Exhibit 2 at 1). The plaintiff raises no challenge to this proposition, (Doc. 29 at 9–11), and she affirmatively acknowledges that Brown "has the authority to hire and decide the amount of pay for the hiree." (Doc. 30 at 2).

While " '[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice' " to meet the defendant's burden of proof, *Harbert International v. James,* 157 F.3d at 1282 (quoting *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 830 (11th Cir.1982)), and while the defendant's own conclusory affidavit may be insufficient when unsupported by other evidence or the inherent nature of the defendant's job, *Beech v. City of Mobile,* 874 F.Supp. 1305, 1310 (S.D.Ala.1994), a defendant may in appropriate cases meet his burden based on affidavit. *E.g., Rich v. Dollar,* 841 F.2d at 1564. In this case, Brown's affidavit is undisputed and at least partially ratified by the plaintiff and is consistent with the nature of his office and the statutory grant of authority.

In summary, the defendants have established that, in all challenged respects, Brown acted pursuant to his discretionary authority.

## 2. Violation of a clearly established constitutional right.

■ To be clearly established, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated reasonable government agent that what the defendant is doing violates

federal law in the circumstances." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1150 (11th Cir.1994)(en banc). To meet this standard, there must be binding precedent,[25] extant at the time of the alleged violation,[26] addressing a materially similar fact situation.[27]

■ Absent such clarity in prior case law, the plaintiff can overcome qualified immunity "only by showing that the official's conduct lies so obviously at the very core of what the [constitutional or statutory provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997). This "slender category of cases," *id.* at 1420, represents a "narrow exception" to the "rule requiring particularized case law to establish clearly the law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir.2000).

■ The constitutional right asserted by the plaintiff is an equal protection right to be free of race and sex discrimination in employment. Brown "does not dispute that the right to be free from workplace discrimination on the basis of race and sex is clearly established law." (Doc. 21 at 24). His concession is appropriate. *E.g., Alexander v. Fulton County*, 207 F.3d 1303, 1321 (11th Cir.2000)("[T]here can be no

doubt that in December 1992 ... it was clearly established that intentional discrimination in the workplace on account of race violated federal law."). The defendants, however, argue that a more fact-specific case is required, one establishing that "is was a violation of plaintiff's equal protection rights for Dr. Brown to reorganize the athletic department and assign the athletic duties to an administrator, rather than a coach." (Doc. 21 at 23).

To the extent the defendants suggest that the plaintiff must produce a binding case holding that the equal protection clause applies to assignments to athletic directorships pursuant to departmental reorganizations or that the clause applies to the defendants' other challenged employment actions, the suggestion is incorrect. The principle that the equal protection clause prohibits race and sex discrimination in employment necessarily embraces such discrimination in the particulars challenged by the plaintiff, and the defendants' concession that the overarching principle was clearly established encompasses a concession that its application to the defendants' alleged actions was also clearly established.

More likely, the defendants are arguing that it must have been clear that Brown's actions, under the particular circum-

---

**25.** "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or [when relevant] the highest court of the state where the case arose." *Jenkins ex rel. Hall v. Talladega City Board of Education*, 115 F.3d 821, 827 n. 4 (11th Cir.)(en banc), *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997). *But see Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)("Petitioners have not brought to our attention any cases of controlling authority in their jurisdiction ... which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed his actions were lawful.").

**26.** "Any case law that a plaintiff relies upon to show that a government official has violated a clearly established right must pre-date

the officer's alleged improper conduct ...." *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir.1998).

**27.** *Lassiter v. Alabama A & M*, 28 F.3d at 1149–50 ("Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases."); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."), *modified on other grounds*, 14 F.3d 583 (11th Cir.1994); *Sanders v. Howze*, 177 F.3d 1245, 1249–50 (11th Cir.1999)("[P]revious case law must have developed [the alleged federal right] in a concrete factual context so as to make it obvious to a reasonable actor that his actions violate federal law.... If no such case law exists, then the defendants are entitled to qualified immunity."); *Harbert International v. James*, 157 F.3d at 1285 (prior case law must be "factually analogous").

stances, violated the plaintiff's equal protection rights, with the salient circumstance being Brown's intent. As noted, there remains a genuine issue concerning whether Brown acted with a discriminatory intent in connection with the 1997 failure to promote, the plaintiff's disparate pay (other than enhancement for past work experience), the awarding of summer contracts, and the residual terms and conditions alleged by the plaintiff. *See* Part I.D. This fact issue precludes Brown from receiving the benefit of qualified immunity on the basis that he lacked a discriminatory intent.

■ The plaintiff assumes that this is the end of the qualified immunity inquiry. (Doc. 29 at 11). However, even assuming the plaintiff may prove that Brown in fact acted with the requisite discriminatory intent, he is entitled to qualified immunity if his conduct was nevertheless objectively reasonable. *E.g., Koch v. Rugg,* 221 F.3d 1283, 1295 (11th Cir.2000). His conduct was objectively reasonable if " 'the only conclusion a rational jury could reach is that reasonable offic[ials] would disagree about the legality of the defendant['s] conduct under the circumstances.' " *Brown v. Cochran,* 171 F.3d 1329, 1332 (11th Cir.1999)(quoting *Lennon v. Miller,* 66 F.3d 416, 421 (2nd Cir.1995)).

■ In particular, a defendant sued for discrimination under Section 1983 may prevail, even if the plaintiff establishes that the defendant acted with a discriminatory motive, if the defendant establishes that he also acted from a non-discriminatory motive and that the non-discriminatory motive alone would have prompted the same adverse action even had the discriminatory motive not existed. The defense is often referred to as the *"Mt. Healthy"* defense, after the seminal case establishing the principle. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "The *Mt. Healthy* doctrine is part of the law and, when the concept is presented by a defendant's argument, must not be overlooked in the qualified immunity analysis." *Foy v. Holston,* 94 F.3d 1528, 1534 (11th Cir.1996). The defendants, invoking this principle, argue that "there is ample evidence that the defendant would have reached the same decisions anyway." (Doc. 21 at 25).

Application of the *Mt. Healthy* doctrine to qualified immunity analysis requires the defendant to identify a legally adequate, non-discriminatory motive for the challenged action,[28] to produce evidence that the defendant had sufficient reason to believe that the facts underlying the non-discriminatory motive actually existed,[29] and to produce evidence that the defendant relied, at least in part, on the articulated reason.[30] Because all issues of fact must be resolved favorably to the plaintiff,[31] the defendant must rely on uncontroverted evidence.[32]

28. *Foy v. Holston,* 94 F.3d at 1534 (qualified immunity may be available when "an adequate lawful motive is present"); *Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1379 (11th Cir.1997)(there must be an "adequate lawful motive" by the defendant official).

29. *Johnson v. City of Fort Lauderdale,* 126 F.3d at 1379 (although the plaintiff did not admit lying, "[t]he transcripts of the disciplinary hearings ... show that the defendants had more than sufficient reason to believe that [the plaintiff] lied and fabricated evidence ...."); *Foy v. Holston,* 94 F.3d at 1530–31, 1535 (information from a teenager that she had been beaten presented "cause to understand that [she] was possibly being mistreated").

30. *Stanley v. City of Dalton,* 219 F.3d 1280, 1296 (11th Cir.2000)("A defendant is entitled to qualified immunity under *Foy* only where, among other things, the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations.") (emphasis omitted); *Foy v. Holston,* 94 F.3d at 1535 ("[T]he record makes it clear that Defendants' acts were actually motivated by lawful considerations ....").

31. *E.g., Brown v. Cochran,* 171 F.3d at 1332.

32. *Stanley v. City of Dalton,* 219 F.3d at 1296 (*Foy* applies only where "the record indisputably establishes" that the defendant acted in part from lawful motives); *id.* at 1297 ("[T]he summary judgment record indisputably establishes that [the defendant official] was moti-

On the other hand, even though to prevail on the merits the defendant official must establish that his reliance on the non-discriminatory motive would have resulted in the same adverse action even absent a discriminatory motive, to prevail on the basis of qualified immunity the defendant official need not do so, since the very existence of a mixed motive generally requires the conclusion that "reasonable officials would disagree about the legality of the defendant['s] conduct under the circumstances," including the circumstance of the non-discriminatory motive.[33] If the defendant's burden is satisfied, the plaintiff may avoid summary judgment on the grounds of qualified immunity only if, "as a legal matter, it is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive." *Foy v. Holston*, 94 F.3d at 1535. This will be the rare case because, when qualified immunity depends on a fact-specific balancing, the "bright lines" required to defeat qualified immunity are "almost always" lacking in the pre-existing case law. *Id.* at 1535 n. 8.

With this framework in mind, the Court turns to consider the defendants' evidence concerning the *Mt. Healthy* doctrine.[34]

### a. Failure to promote.

■ As noted, the defendants first argue that the plaintiff was not made athletic director when Alford resigned due to concerns over her reliability, trustworthiness and loyalty. There seems no doubt that

such deficiencies would provide a legally adequate, non-discriminatory reason not to promote the plaintiff. Brown identified, at least generally, several incidents on which this perception of the plaintiff was based. (Doc. 21, Exhibit 2 at 3; Exhibit 6 at 5). The defendants have not meaningfully challenged the existence of these incidents or their reflection on the plaintiff's reliability, trustworthiness and loyalty. The Court therefore concludes that the record shows that Brown had sufficient reason to believe that the plaintiff's reliability, trustworthiness and loyalty were impaired.

However, "the record [does not] *indisputably* establis[h] that [Brown] *in fact* was motivated, at least in part," by this consideration. *Stanley v. City of Dalton*, 219 F.3d at 1296 (emphasis added). This case is very nearly the opposite of *Stanley*. In *Stanley*, the defendant official "consistently"—on at least four different occasions—identified the same reason for terminating the plaintiff, 219 F.3d at 1296–97; here, as discussed in Part I.D.1.a, Brown has given fluctuating explanations of his reasons for failing to name the plaintiff as athletic director. In *Stanley*, an advisor also recommended that the plaintiff be terminated for the same reason as given by the defendant official, *id.* at 1297; here, there is no evidence that others encouraged Brown not to promote the plaintiff due to concerns over her reliability, trustworthiness and loyalty and, on the contrary, Smallwood recommended the plaintiff for promotion. (Doc. 21, Exhibit 6 at 3). In *Stanley*, the defendant official acted

---

vated, at least in part, by [lawful considerations]."); *Johnson v. City of Fort Lauderdale*, 126 F.3d at 1379 ("The holding in *Foy* rested primarily on the existence of an undisputable and adequate lawful motive ...."); *id.* (basing qualified immunity on evidence offering "conclusive support" that the defendants relied on their alleged lawful motives).

**33.** *Stanley v. City of Dalton*, 219 F.3d at 1294, 1297 (defendant entitled to qualified immunity even though he was unable to establish on motion for summary judgment that he would have taken the same action absent the alleged unlawful motive).

**34.** The plaintiff argues that the defendants waived the *Mt. Healthy* issue by failing to plead it as an affirmative defense. (Doc. 29 at 21–22). The *Mt. Healthy* issue in the present context, however, is not a separate defense but an aspect of the qualified immunity defense, which the defendants asserted at their earliest opportunity. (Doc. 2 at 8). At any rate, the defendants asserted a *Mt. Healthy* defense in the amended pretrial document without objection from the plaintiff. (Doc. 35 at 18).

consistently with his stated non-discriminatory reason by not terminating the plaintiff following his protected speech but promptly terminating him after his unprotected conduct four years later, 219 F.3d at 1297; here, Brown behaved inconsistently with his articulated reason by refusing to name the plaintiff as athletic director while finding her the most qualified to be assistant athletic director.

The defendants also argue that Brown desired someone who was an administrator and not a coach to be athletic director. Again, there appears to be no doubt that lack of this attribute would provide a legally adequate, non-discriminatory reason not to promote the plaintiff, and it is uncontroverted both that the plaintiff did not possess this attribute and that Brown knew she did not possess this attribute. Again, however, in light of Brown's offering the job to a chemistry teacher, the record does not "indisputably establis[h]" that Brown was in fact motivated, even in part, by this consideration.

Accordingly, the Court concludes that the defendants have not satisfied the requirements for establishing Brown's qualified immunity through application of the *Mt. Healthy* doctrine as it relates to the plaintiff's 1997 promotion claim.

### b. Other challenged employment actions.

As noted in Part I.D., the defendants have offered no response or challenge to the plaintiff's claim that she was paid less than similarly situated black and/or male employees performing similar less work and possessing similar or lesser qualifications, that she was discriminated against concerning the awarding of summer contracts, and that she was discriminated against in other terms, conditions and privileges of employment. Without articulating a reason for the alleged discrimination, the defendants cannot establish that the

reason is legally adequate and non-discriminatory, that Brown had sufficient reason to believe it existed, or that he undisputably relied on it, in whole or in part. In short, absent an articulated reason for the defendants' actions, Brown cannot establish qualified immunity through application of the *Mt. Healthy* doctrine.

### III. Equal Pay Act.

The defendants argue that the plaintiff's Equal Pay Act claim is barred by the statute of limitations, the Eleventh Amendment and the Tenth Amendment.

### A. Statute of Limitations.

A claim under the Equal Pay Act must be brought "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued ...." 29 U.S.C. § 255(a); *Mitchell v. Jefferson County Board of Education*, 936 F.2d 539, 548 (11th Cir.1991). As noted in Part I.A., each paycheck represents a fresh violation commencing a separate limitations period. This variation of the continuing violation doctrine applies to actions under the Equal Pay Act. *Id.* at 548. Accordingly, the plaintiff's claim under the Equal Pay Act for discrimination in compensation is timely only with respect to such discrimination occurring on or after July 24, 1996 or, in the case of willful violations, on or after July 24, 1995.[35]

### B. Eleventh Amendment.

The defendants argue both that Congress did not articulate its intent to abrogate the states' Eleventh Amendment immunity in unmistakably clear language and that the Equal Pay Act does not constitute appropriate legislation under Section 5 of

---

**35.** The plaintiff's Equal Pay Act claim for retaliatory refusal to promote to athletic director is clearly timely with respect to Gourdine's 1997 selection. Whether it is timely with respect to Alford's June 1996 selection depends on whether the two- or three-year limitations period applies. As the defendants have not addressed the issue, neither does the Court.

the Fourteenth Amendment. (Doc. 21 at 43–46).

Apparently every appellate court to consider the issue has concluded that Congress, in enacting the Equal Pay Act, expressed its intent to abrogate the Eleventh Amendment with all necessary clarity. *E.g., Kovacevich v. Kent State University,* 224 F.3d 806, 818–19 (6th Cir.2000); *O'Sullivan v. Minnesota,* 191 F.3d 965, 967–68 (8th Cir.1999); *Varner v. Illinois State University,* 150 F.3d 706, 717 (7th Cir.1998), *vacated,* 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000); *Ussery v. Louisiana ex rel. Louisiana Department of Health & Hospitals,* 150 F.3d 431, 435 (5th Cir.1998), *cert. dismissed,* 526 U.S. 1013, 119 S.Ct. 1161, 143 L.Ed.2d 225 (1999); *Mills v. Maine,* 118 F.3d 37, 42 (1st Cir.1997); *see also Hundertmark v. Florida Department of Transportation,* 205 F.3d 1272, 1274 (11th Cir.2000)(accepting the defendant's concession that Congress adequately expressed its intent to abrogate). The defendants offer, and the Court discerns, no reason to ignore this wealth of authority.

The defendants appropriately concede that the Equal Pay Act was enacted pursuant to Congress's enforcement powers under Section 5 of the Fourteenth Amendment and that this provision constitutes an appropriate fount of power to abrogate the Eleventh Amendment. *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). They argue, however, that the Equal Pay Act exceeds Congress's authority under Section 5 because it does not represent a measured, proportional response to an established evil. While courts are obligated to conduct this searching inquiry of "congruence and proportionality," *Kimel v. Florida Board of Regents,* 528 U.S. 62, 81–83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), every appellate court to consider the issue

in light of *Kimel* has concluded that the Equal Pay Act satisfies this test. *Varner v. Illinois State University,* 226 F.3d 927, 936 (7th Cir.2000); *Kovacevich v. Kent State University,* 224 F.3d 806, 820–21 (6th Cir.2000). In a final, fatal blow to the defendants' position, the Eleventh Circuit as well has adopted this view. *Hundertmark v. Florida Department of Transportation,* 205 F.3d 1272, 1275–77 (11th Cir. 2000).[36]

In summary, the Eleventh Amendment is no bar to the plaintiff's Equal Pay Act claim against the College.

## C. Tenth Amendment.

While the caption of the defendants' brief questions the Equal Pay Act's constitutionality under the Tenth Amendment, (Doc. 21 at 43), the defendants offer no argument in support of such a proposition, and the argument is deemed waived.[37]

## IV. Title IX.

The defendants argue that Title VII provides the plaintiff's sole remedy for employment discrimination to the exclusion of Title IX, that the Title IX claim is barred by the Tenth and Eleventh Amendments, that Title IX provides no private cause of action for employees, that the plaintiff waived her Title IX claim by failing to pursue the College's internal grievance procedure, and that the plaintiff cannot establish that the College acted with deliberate indifference to discrimination.

### A. Exclusive Remedy.

At least two courts of appeal have held that an employee of an educational institution subject to both Title VII and Title IX may bring a claim for employment discrimination only under Title VII, reasoning that to rule otherwise would allow a plain-

---

**36.** The defendants' motion to stay, (Doc. 41), is therefore **moot.**

**37.** Any Tenth Argument would have to come to grips with the Fifth Circuit's explicit holdings that the Equal Pay Act does not violate

the Tenth Amendment. *See Marshall v. A & M Consolidated Independent School District,* 605 F.2d 186, 188 (5th Cir.1979); *Pearce v. Wichita County,* 590 F.2d 128, 131–32 (5th Cir.1979).

tiff to avoid the carefully measured administrative requirements of Title VII. *Waid v. Merrill Area Public Schools,* 91 F.3d 857, 861–62 (7th Cir.1996); *Lakoski v. James,* 66 F.3d 751, 753–58 (5th Cir.1995), *cert. denied,* 519 U.S. 947, 117 S.Ct. 357, 136 L.Ed.2d 249 (1996). At least three district courts within the Eleventh Circuit have accepted this reasoning and result. *Blalock v. Dale County Board of Education,* 84 F.Supp.2d 1291, 1297–99 (M.D.Ala.1999); *Hazel v. School Board of Dade County,* 7 F.Supp.2d 1349, 1353–54 (S.D.Fla.1998); *Gibson v. Hickman,* 2 F.Supp.2d 1481, 1483–84 (M.D.Ga.1998). District courts within other circuits have ruled likewise. *E.g., Vega v. State University of New York Board of Trustees,* 2000 WL 381430 at 3 (S.D.N.Y.2000); *Cooper v. Gustavus Adolphus College,* 957 F.Supp. 191, 193–94 (D.Minn.1997); *Glickstein v. Neshaminy School Dist.,* 1997 WL 660636 at 15–16 (E.D.Pa.1997).

The plaintiff's laconic response, (Doc. 29 at 22), is to quote an Eleventh Circuit case for the proposition that "[t]he terms of Title IX give educational institutions notice that they must prevent their employees from themselves engaging in intentional gender discrimination .... School administrators cannot discriminate against teachers on account of sex." *Davis v. Monroe County Board of Education,* 120 F.3d 1390, 1401 (11th Cir.1997), *rev'd on other grounds,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

▆ There is no question but that Title IX prohibits employment discrimination: "[E]mployment discrimination comes within the prohibition of Title IX." *North Haven Board of Education v. Bell,* 456 U.S. 512, 530, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). The question, however, is not whether Title IX prohibits employment discrimination but whether it provides a

private cause of action in favor of an employee to redress such discrimination when the employer is also subject to Title VII. *Davis,* a case involving student-on-student sexual harassment, did not purport to answer this question. Indeed, this Court has identified only two Eleventh Circuit cases in which a claim of employment discrimination in violation of Title IX remained on appeal, and in neither case did the Court address the propriety of such a claim. *See Ebrahimi v. City of Huntsville Board of Education,* 114 F.3d 162 (11th Cir.1997); *Avery v. Homewood City Board of Education,* 674 F.2d 337 (5th Cir.1982), *cert. denied,* 461 U.S. 943, 103 S.Ct. 2119, 77 L.Ed.2d 1300 (1983).[38]

▆ In light of the weight of authority that a Title IX claim of employment discrimination may not be maintained to the extent that Title VII provides a parallel remedy, and of the plaintiff's failure to provide any support for a contrary conclusion, the Court rules that the plaintiff's Title IX claim is precluded by Title VII.[39]

## V. State Law Claims.

The defendants argue that they possess immunity from the plaintiff's state law claims.

### A. The College.

### 1. Eleventh Amendment.

▆ The Eleventh Amendment bars suits against the state in federal court whether based on alleged violations of federal law or of state law. *DeKalb County School District v. Schrenko,* 109 F.3d 680, 688 (11th Cir.)("[A] federal court may not entertain a cause of action against a state for alleged violations of state law, even if that state claim is pendent to a federal claim which the district court could adjudi-

---

**38.** The Court has discovered no appellate decision clearly and analytically holding that a plaintiff may maintain a Title IX action against her employer for a wrong prohibited, and a remedy provided, by Title VII. The Sixth Circuit overruled a district court's holding that Title VII precludes a parallel Title IX

claim, but it provided no basis for its ruling. *Ivan v. Kent State University,* 1996 WL 422496 at 2 n. 10 (6th Cir.1996).

**39.** In light of this ruling, it is unnecessary to consider the defendants' other arguments.

**1344**

cate.")(citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)), *cert. denied,* 522 U.S. 1015, 118 S.Ct. 601, 139 L.Ed.2d 489 (1997); *Silver v. Baggiano,* 804 F.2d 1211, 1213 (11th Cir.1986). The Court's determination in Part II.C.1 that the College is an arm of the state partaking of the state's Eleventh Amendment immunity therefore precludes as well the plaintiff's state law claims against the College.

### 2. State Constitution.

■ "The State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, Section 14. Alabama's sovereign immunity " 'was intended to protect from suit only immediate and strictly governmental agencies of the State.' " *Rodgers v. Hopper,* 768 So.2d 963, 966 (Ala.2000)(quoting earlier Alabama cases). Identifying such entities generally requires "an assessment of (1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body." *Id.*

■ No such factor analysis is necessary in considering the sovereign immunity of the state's colleges and universities, because "[t]his immunity extends to the state's institutions of higher learning." *Taylor v. Troy State University,* 437 So.2d 472, 474 (Ala.1983). In particular, the state's sovereign immunity reaches community colleges such as the College. *Ex parte Craft,* 727 So.2d 55, 58 (Ala.1999); *Williams v. John C. Calhoun Community College,* 646 So.2d 1, 2 (Ala.1994); *Shoals Community College v. Colagross,* 674 So.2d 1311, 1313–14 (Ala.Civ.App.1995), *cert. denied,* 674 So.2d 1315 (Ala.1996).

All that need be shown is that the defendant "was a post-secondary educational institution operating under the authority and supervision of the State Board of Education." *Id.* at 1314. As the plaintiff affirmatively alleges these facts in her complaint, (Doc. 13 at 1), the College's state law sovereign immunity is established.

■ The plaintiff's only response is that "a plaintiff can even seek equitable monetary relief against a state agency itself." (Doc. 29 at 7). In fact, however, "[t]he State's immunity bars suits for relief by way of mandamus or injunction, no less than suits for any other remedy." *Taylor v. Troy State University,* 437 So.2d at 474.[40]

### B. Brown—Official Capacity.

■ While the Eleventh Amendment allows a federal suit against a state official in his official capacity for certain forms of prospective equitable relief to rectify violations of *federal* law, no similar exception exists when the state official is sued in federal court for violations of *state* law. In the latter situation, the official's immunity pursuant to the Eleventh Amendment is absolute. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104–06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Court's conclusion that the College is clothed with Eleventh Amendment immunity, therefore, necessarily dictates that Brown in his official capacity is completely immune from the plaintiff's state law claims.[41]

### C. Brown—Individual Capacity.

■ Neither the Eleventh Amendment nor the qualified immunity doctrine sup-

---

**40.** The authorities on which the plaintiff relies held only that Section 14 does not preclude a suit to require state officials to perform a ministerial act that may result in compensation to the plaintiff. *Vaughan v. Sibley,* 709 So.2d 482, 485–86 (Ala.Civ.App.1997), *cert. denied; Breazeale v. Board of Trustees,* 575 So.2d 1126, 1128 (Ala.Civ.App.1991); *Baggiano v. Miller,* 437 So.2d 557 (Ala.Civ.App. 1983).

**41.** That Brown in his official capacity may be amenable to suit in *state* court because his *state* law immunity is not absolute, (Doc. 29 at 6–7), is simply irrelevant to his amenability to suit in *federal* court in the face of his *federal* immunity.

plies a state official protection from suits against him in his individual capacity under state law. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir.1995); *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir.), *cert. denied*, 513 U.S. 929, 115 S.Ct. 320, 130 L.Ed.2d 281 (1994). Any protection afforded the official from state law claims against him in his individual capacity must be provided, if at all, by state law.

 The constitutional sovereign immunity of the state and its agencies as embodied in Section 14 extends as well to its officers and employees, sued in either their official or individual capacities, when the suit is effectively one against the state. *Williams v. John C. Calhoun Community College*, 646 So.2d 1, 2 (Ala.1994). However, sovereign immunity does not extend to state officials sued for certain forms of non-monetary relief, including the following: " '(1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts ....' " *Id.* (quoting *Taylor v. Troy State University*, 437 So.2d 472, 474 (Ala.1983)). Moreover, "Section 14 does not ... prohibit an action brought against a state official in his or her representative capacity or individually if the plaintiff alleges that the state official acted fraudulently, in bad faith, beyond his or her authority, or in a mistaken interpretation of the law." *Bonner v. Henson*, 693 So.2d 484, 486 (Ala.Civ.App.1997).

 Alabama also recognizes what has been termed "discretionary function" immunity. Although there is some disagreement about whether this immunity springs from Section 14 or from common law,[42] it is subject to the same exceptions for fraud, willfulness, malice and bad faith. *E.g.*, *Wright v. Wynn*, 682 So.2d 1, 2 (Ala.1996). As recently restated by a plurality of the Alabama Supreme Court, "[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon [certain categories of discretionary functions]" unless, inter alia, "the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 2000 WL 1728367 at 11–12 (Ala. November 22, 2000)(plurality).

 Brown argues that he partakes of the state's Section 14 immunity and of discretionary function immunity. (Doc. 21 at 16–17). The plaintiff questions whether Brown's alleged misconduct may accurately be described as discretionary. (Doc. 29 at 7). The Court pretermits consideration of this issue because the plaintiff has explicitly alleged that Brown acted "without authorization of law, ... in bad faith and willfully, knowingly, and purposefully with a specific intent to deprive plaintiff of her rights herein alleged," (Doc. 13 at 22), language that directly implicates an exception to all forms of state agent immunity under Alabama law. The defendants have not challenged these allegations on either factual or legal grounds and therefore cannot have established Brown's entitlement to summary judgment.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted** in its entirety with respect to the plaintiff's claim under Title IX; **granted** in its entirety with respect to the plaintiff's claim against the College under Section 1983 and state law; **granted** with respect to the plaintiff's claim against Brown in his official capacity under Section 1983 except for appropriate prospective equitable relief; **granted** in its entirety with respect to the plaintiff's claim against Brown in his official capacity under state law; **granted** with respect to the

---

**42.** *Compare Ex parte Cranman*, 2000 WL 1728367 (Ala. November 22, 2000)(plurality) *with id.* at 13 (Johnstone, J., concurring spe-

cially) *and id.* at 13–16 (Cook., J., concurring in part and concurring in the judgment).

plaintiff's claim under Title VII and Section 1983 to the extent based on discriminatory failure to enhance the plaintiff's salary due to past work experience; **granted** with respect to the plaintiff's claim under Title VII to the extent based on discrimination in compensation occurring before January 17, 1997, discrimination in summer contracts for 1993 through 1996, and discriminatory failure to promote in 1996; **granted** with respect to the plaintiff's Section 1983 claim to the extent based on discrimination in compensation occurring before July 24, 1996, discrimination in summer contracts for 1993 through 1996, and discriminatory failure to promote in 1996; and **granted** with respect to the plaintiff's claim under the Equal Pay Act with respect to any discrimination occurring before July 24, 1996 if non-willful or before July 24, 1995 if willful. In all other respects, the defendants' motion for summary judgment is **denied.**