United States Court of Appeals,

Eleventh Circuit.

No. 94-8222.

Charles McCOY, Plaintiff-Appellee,

v.

Charles B. WEBSTER, Individually and as Sheriff of Richmond County, Georgia, William Mnu Brown, Individually and as Deputy Sheriff of Richmond County, Georgia, Defendants-Appellants,

Hobson Chavous, Henry Brigham, Herb Beckham, Jessie Carroll, William Mayes and Lee Neal, as Commissioners of Richmond County, Georgia, Defendants.

March 14, 1995.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV191-157), Dudley H. Bowen, Jr., Judge.

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and CARNES[*], District Judge.

PER CURIAM:

Charles McCoy filed this suit against Charles B. Webster and William Brown, the Sheriff and a Deputy Sheriff, respectively, of Richmond County, Georgia, asserting a 42 U.S.C. § 1983 claim and various state tort claims. The district court held that Brown was not entitled to qualified immunity and denied his motion for summary judgment on all claims. The district court granted Webster summary judgment on the section 1983 claim, but denied Webster's motion for summary judgment on the state law claims. Both Brown and Webster appeal. We reverse the denial of Brown's motion for summary judgment on the basis of qualified immunity and remand the state claims.

[*]Honorable Julie E. Carnes, U.S. District Judge for the Northern District of Georgia, sitting by designation.

After conviction in federal court, McCoy was temporarily incarcerated in Cell Block East on the sixth floor of the Richmond County, Georgia jail. Each of the six floors in the Richmond County jail is divided into an east and west cell block. Both the east and west cell blocks on the sixth floor are composed of individual cells grouped around a community area. These community areas are separated from one another by metal and glass walls through which inmates can communicate.

At 1:30 a.m. on August 17, 1989, McCoy complained to the tower guard that he was being threatened and harassed and had been beaten by Craig Curry, another prisoner in Cell Block East. McCoy told the guard that he feared for his life and asked to be moved to another floor. He also requested medical attention for back pain resulting from the beating. The tower guard informed his shift supervisor, defendant Deputy Brown, of McCoy's complaints and was instructed to send McCoy to Brown's office. The tower guard recorded this in the tower guard log.

McCoy told Brown that Curry had beaten and threatened him and again expressed fear for his life.[1] The jail has a policy of segregating an inmate once an official determines that the inmate's safety is being threatened. Having determined that McCoy might be in danger, Brown sent McCoy to the nurse for medical attention and then placed McCoy in a holding cell for the night. Brown went off

---

[1]The actual content of this conversation is in dispute. However, for purposes of summary judgment, we view the facts in the light most favorable to the plaintiff. *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992).

duty at about 6:00 a.m. He did not file any written report of McCoy's complaint nor did he tell any member of the oncoming shift about the incident.

At around 11:00 a.m. that day, McCoy was transferred back to the sixth floor, but placed in Cell Block West. Brown did not participate in the decision or the actual transfer. Two days later, McCoy was attacked and beaten by other inmates incarcerated on Cell Block West.

McCoy filed a complaint asserting a 42 U.S.C. § 1983 claim against Brown, Sheriff Charles B. Webster, and several other defendants. McCoy alleges that the defendants were deliberately indifferent to his personal safety in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He also asserts a number of tort claims under Georgia law. The district court granted Webster's motion for summary judgment on the section 1983 claim, but denied Webster summary judgment on the Georgia negligence claims. The district court denied Brown's motion for summary judgment on all claims. [2] Brown and Webster appeal.

On appeal, Brown contends that the district court erred in denying him qualified immunity and in denying summary judgment on the supplemental Georgia negligence claim. Webster asserts that the district court erred in denying summary judgment on the Georgia negligence claims.

---

[2]One of the original defendants was eliminated from the action when the district court granted its motion to dismiss. The district court also granted the Commissioners' motion for summary judgment.

II.

A denial of summary judgment on the basis of qualified immunity is immediately appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The issue of qualified immunity presents a question of law; thus, on appeal, this court considers the issue de novo. *Elder v. Holloway,* --- U.S. ----, ----, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994). Because the district court properly retained jurisdiction over Webster, 28 U.S.C. § 1367(a) (1993); *see also Palmer v. Hospital Authority of Randolph Co.,* 22 F.3d 1559, 1568 (11th Cir.1994),[3] we have discretionary pendent appellate jurisdiction over Webster's appeal. *Swint v. City of Wadley, Al.,* 5 F.3d 1435, 1449 (11th Cir.1993), *cert. granted sub nom. Swint v. Chambers County Comm'n,* --- U.S. ----, 114 S.Ct. 2671, 129 L.Ed.2d 808 (1994).

III.

Qualified immunity shields government officials performing discretionary duties from civil trial and liability if their conduct violates no "clearly established statutory or

---

[3]This action was filed in August 1991, after the enactment of the Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5113. Thus 28 U.S.C. § 1367, codifying supplemental jurisdiction, applies to this case. Section 1367(a) requires the district court to exercise supplemental jurisdiction over claims which are closely related to claims over which the district court has original jurisdiction. 28 U.S.C. § 1367(a) (1993). "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* Therefore, the district court was not required to dismiss the supplemental state law claims against Webster although no federal claim remains against Webster. *Id.; see also Palmer,* 22 F.3d at 1567. If after this appeal, however, no federal claim remains against any of the defendants, the district court may decline to exercise supplemental jurisdiction over the state claims against both Brown and Webster. 28 U.S.C. § 1367(c) (1993); *see* discussion *infra* part IV.

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Therefore, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc).

This court has developed the following framework for analyzing qualified immunity:

> In *Zeigler v. Jackson,* [716 F.2d 847, 849 (11th Cir.1983),] this Court established a two-step analysis to be used in applying the *Harlow* test: the defendant government official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred," and then the burden shifts to the plaintiff to demonstrate that the defendant "violated clearly established constitutional law."

*Sammons v. Taylor,* 967 F.2d 1533, 1539 (11th Cir.1992).

Here, the district court found against Brown in both steps of the two-step analysis. The district court concluded that Brown was performing a ministerial duty, rather than acting with discretion, when he moved McCoy from the sixth floor to the holding cell upon

being informed of the threat to McCoy's life. The district court further held that even if Brown were acting within his discretionary authority, McCoy had successfully demonstrated that "a reasonable official in Lt. Brown's circumstances would have known that [Brown's] conduct violated clearly established constitutional law based upon the information available to him." (R1-28-14) (internal quotations omitted). We disagree with the district court's analysis under both steps.

The district court concluded that Brown was not acting with discretion but merely performing a ministerial duty because the Richmond County jail had a policy of moving inmates who were in danger. We need not find that Brown's conduct was discretionary in this sense in order to grant him qualified immunity. In *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994), we interpreted the term "discretionary authority" to include actions that do not necessarily involve an element of choice. In *Jordan,* we held that qualified immunity was available to a government official whose actions may be ministerial so long as the official's actions " "(1) were undertaken pursuant to the performance of his duties,' and (2) were "within the scope of his authority' ". *Id.* (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)). Brown's conduct falls within this definition; he was acting within his authority and pursuant to his duties as shift supervisor. Therefore, Brown has met his burden by establishing that he was acting within the scope of his discretionary authority.

Once Brown has established that he was acting within the scope of his discretionary authority, the burden shifts to McCoy to

demonstrate that a reasonable official would have known that his conduct violated a clearly established constitutional right. *Zeigler,* 716 F.2d at 849. The district court found that McCoy had satisfied this burden and that Brown was therefore not entitled to qualified immunity. We disagree.

As noted by the district court, a prison official's failure to act in certain circumstances can amount to an infliction of cruel and unusual punishment. An official's deliberate indifference to a known danger violates an inmate's Eighth Amendment rights. *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251 (1976). More specifically, "[w]hen officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990), *see also Hopkins v. Britton,* 742 F.2d 1308, 1310 (11th Cir.1984). However, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause...." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Furthermore, "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Id.,* 475 U.S. at 319, 106 S.Ct. at 1084.

McCoy contends that although Curry did not personally attack him a second time, Curry was still responsible for the attack

because Curry was able to communicate to inmates on Cell Block West through the glass partition. Additionally, McCoy argues that he would not have been placed in either cell block on the sixth floor if Brown had communicated the situation to the oncoming shift. Finally, McCoy contends that Brown's failure to communicate the situation to the oncoming shift demonstrates deliberate indifference to McCoy's safety.

Here, Brown took measures to provide McCoy reasonable protection. After making sure McCoy received medical attention, Brown placed McCoy in a holding cell for the night. The tower guard made a record of the situation in the log after receiving instructions from Brown. Brown had nothing to do with McCoy's transfer to Cell Block West on the sixth floor. McCoy was not attacked by Curry and the attack did not occur until two days after McCoy's return to the sixth floor. We conclude that a reasonable prison official in Brown's position could have believed his conduct to be lawful in light of the information he possessed.

It is unclear to us that Brown's omission rises to the level of obduracy and wantonness required by *Whitley.* Accordingly, Brown could reasonably believe that his failure to communicate the situation to the oncoming shift was not unconstitutional. Furthermore, *Lassiter* requires McCoy to point to a case in which similar conduct was held to be deliberately indifferent in order to demonstrate that his clearly established right was violated. *Lassiter,* 28 F.3d at 1151. McCoy has failed to do so and our research reveals no such case. The district court, therefore, erred in concluding that McCoy has satisfied his burden of

demonstrating that Brown's conduct violated a clearly established right. Under these circumstances, Brown is entitled to qualified immunity and we reverse the denial of summary judgment on the section 1983 claim.

IV.

The district court also denied summary judgment on the state tort claims McCoy asserts against Brown and Webster. Although we have the discretion to review nonfinal decisions of the district court because we properly have jurisdiction to review the denial of qualified immunity, *Swint,* 5 F.3d at 1449, we decline to exercise our pendent appellate jurisdiction over these nonfinal decisions. Furthermore, because the district court's denial of summary judgment on the federal claim against Brown is reversed, no federal claim remains. Pursuant to 28 U.S.C. § 1367(c), the district court may decline to exercise its supplemental jurisdiction when all claims over which the district court has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c). [4] The district court, therefore, must revisit the state law claims.

V.

Because the law was not clearly established that Brown's conduct, based on the information he possessed, violated McCoy's Eighth Amendment right, Brown is entitled to qualified immunity.

---

[4]Under some circumstances, we have held that a district court abuses its discretion when it dismisses a pendent state law claim after the statute of limitations has run. *Edwards v. Okaloosa Co.,* 5 F.3d 1431, 1435 (11th Cir.1993) (applying common law pendent claim jurisdiction as it existed prior to the enactment of the Judicial Improvements Act of 1990). We express no opinion as to whether there is a statute of limitations issue in this case.

Therefore, we reverse the district court's denial of summary judgment on the section 1983 claim against Brown.  The state law claims should be revisited following remand in light of the fact that no federal claim remains.

REVERSED in part and REMANDED.