**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12757

Non-Argument Calendar

————————————————

THONY BEAUBRUN,

Plaintiff-Appellant,

versus

DODGE STATE PRISON,
WARDEN TOMMY BOWEN,
 with all staff, Dodge State Prison, Individual and Official Capacity,
LIEUTENANT BRAY,
 Dodge State Prison, Individual and Official Capacity,
OFFICER BENTLEY,
 Dodge State Prison, Official and Individual Capacity,
COUNSELOR BRAY,
 Dodge State Prison,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 3:22-cv-00097-DHB-BKE

_____

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Thony Beaubrun appeals the district court's dismissal of his 42 U.S.C. section 1983 complaint against the staff of Dodge State Prison, where he used to be incarcerated. In his complaint, Beaubrun alleged that prison staff violated his constitutional rights under the Eighth Amendment by failing to intervene and protect him from attack by another inmate and by being deliberately indifferent to his injuries after the attack. Beaubrun also alleged that Dodge staff violated his procedural due process rights under the Fourteenth Amendment when they administratively segregated him for ten days and violated them again when they transferred him to Riverbend Correctional Facility in retaliation for filing a grievance. The district court dismissed the complaint for failure to state a claim, and Beaubrun appealed. Because we agree with the district court that Beaubrun has failed to state each of the claims properly before us on appeal, we affirm.

## FACTUAL BACKGROUND

Beaubrun is currently a prisoner at Riverbend Correctional. He filed his section 1983 complaint based on alleged violations of his constitutional rights under the Eighth and Fourteenth Amendments that he says happened while he was an inmate at Dodge

State Prison, where he was incarcerated before his transfer to Riverbend.

We accept as true the following allegations. In August 2021, while Beaubrun was a prisoner at Dodge, Warden Bowen moved him to prison dorm A-3, a "high-risk" dorm where inmates "advocated" drugs, tobacco, violence, and criminal activity. Bowen was aware of these dangers. Beaubrun asked prison staff to move him to a safer dorm more than once, but Counselor Bray denied his requests.

On June 12, 2022, Lieutenant Bray and Officer Bentley were present in the daily room when another inmate attacked and "beat up" Beaubrun. The officers watched the attack without doing anything. According to Beaubrun, the officers didn't intervene because Lieutenant Bray and the inmate who attacked Beaubrun were in the same gang. Beaubrun hit a table and the floor during the attack, suffering unspecified injuries to his head, knees, and arm that he describes as "permanent." He is still in pain and suffered emotional distress from the attack.

After the attack, Lieutenant Bray and Officer Bentley took Beaubrun to the Dodge medical department, where, because of a staff shortage, he was declined immediate treatment and told to put in a medical request. Lieutenant Bray and Officer Bentley took Beaubrun to "the hole" for ten days of administrative segregation where temperatures reached one-hundred degrees. Beaubrun eventually received a medical "call out" to go back to the medical department. Back at medical, Beaubrun asked for an X-ray, but the

request was denied because no X-ray machines were available, and medical staff prescribed him 600 mg of ibuprofen to treat his injuries. While Beaubrun was still in administrative segregation, two inmates stole $67,000 from his bank account. Beaubrun claims that if he hadn't been in administrative segregation, he would have known about the theft and could've stopped it.

When Beaubrun left administrative segregation, he filed a grievance against Warden Bowen, Counselor Bray, and two investigators named Jackson and Watson based on the attack and segregation. Because of the grievance, Beaubrun says he was transferred to Riverbend four days later.

## PROCEDURAL HISTORY

Beaubrun's second amended complaint named as defendants Warden Bowen, Counselor Bray, Lieutenant Bray, and Officer Bentley in their individual and official capacities.[1] First, Beaubrun alleged that the defendants violated his Eighth Amendment rights by failing to intervene and protect him from attack by another inmate: Warden Bowen by moving him to a high-risk dorm and denying his requests to move to a safer dorm; Counselor Bray by denying his requests to move to a safer dorm; and Lieutenant Bray and Officer Bentley by failing to stop the attack while it was

---

[1] Notably, in its order granting Beaubrun leave to file a second amended complaint, the district court made clear that it was affording Beaubrun leave to amend only his allegations as to the deliberate-indifference-to-medical-needs and failure-to-intervene claims against Lieutenant Bray and Officer Bentley but not to add any new claims or defendants.

happening and failing to stop two inmates from stealing $67,000 from Beaubrun's bank account.

Second, Beaubrun alleged that Lieutenant Bray and Officer Bentley violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs when they refused him immediate medical assistance after the attack. And third, Beaubrun alleged that Lieutenant Bray and Officer Bentley violated his procedural due process rights under the Fourteenth Amendment by administratively segregating him in one-hundred-degree temperatures and that Dodge staff violated his rights again by transferring him to Riverbend for filing a grievance. As relief, Beaubrun sought a declaration that defendants violated his rights under the Constitution, a preliminary and permanent injunction ordering Warden Bowen, Counselor Bray, Lieutenant Bray, and Officer Bentley to follow proper protocol, reimbursement for the $67,000 stolen from his bank account, and $250,000 in "nominal and punitive" damages against each defendant.

Because Beaubrun was representing himself in forma pauperis, a magistrate judge screened the complaint under 28 U.S.C. section 1915A. After reviewing the second complaint, the magistrate judge recommended dismissal.

As to Beaubrun's failure-to-protect claims, the magistrate judge concluded that Beaubrun had failed to state a claim for two reasons. First, Beaubrun had only alleged generalized complaints of fear before the attack, and not any specific threat of violence that the defendants had ignored. Second, Beaubrun had failed to

explain who attacked him, how he was attacked, where the officers were located when he was being attacked, and how they could've reasonably intervened without risking their own health and safety.

As to the deliberate-indifference-to-medical-needs claims, the magistrate judge concluded that Beaubrun had failed to state a claim as to each officer for three reasons. First, Beaubrun hadn't alleged enough detail about his injuries to determine whether a layperson would have known the need for emergency medical treatment was obvious and understood the need for it. Second, Beaubrun had only alleged that Lieutenant Bray and Officer Bentley had prevented him from getting immediate medical treatment because of staffing shortage. Third, Beaubrun's allegations supported, at most, an inference that the officers were negligent. As for his procedural due process claims under the Fourteenth Amendment, the magistrate judge concluded that Beaubrun had failed to state a claim because he hadn't alleged that administrative segregation had extended the duration of his sentence nor how the conditions he faced there had imposed atypical and significant hardship as compared with regular prison life at Dodge.

Beaubrun objected to the magistrate judge's recommendation, but the district court overruled the objections and adopted the recommendation as its own. Beaubrun appeals the dismissal of his complaint.

## STANDARD OF REVIEW

We review de novo a district court's sua sponte dismissal of a prisoner complaint for failure to state a claim. *Christmas v. Nabors*,

76 F.4th 1320, 1328 (11th Cir. 2023). Our review applies the same standard district courts use to dismiss complaints under Federal Rule of Civil Procedure 12(b)(6). *Id.* To prevent dismissal under rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Section 1983 provides a private right of action against "[e]very person who," acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986).

Beaubrun argues that the district court erred when it dismissed his complaint because Dodge staff and the state of Georgia violated his Fourth, Fifth, Eighth, and Fourteenth Amendment

rights, entitling him to relief under section 1983. We first address the dismissal of Beaubrun's Eighth Amendment claims before turning to the dismissal of his Fourteenth Amendment claims. Last, we address Beaubrun's new arguments that the prison staff violated his Fourth, Fifth and Fourteenth Amendments.

### The failure-to-protect claims

Beaubrun first challenges the district court's dismissal of his claims that the defendants failed to intervene and protect him against attack and theft by other inmates in violation of his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment. *See* U.S. CONST. amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994).

Prison officials have a duty to protect prisoners from each other. *Id.* at 833; *Zatler*, 802 F.2d at 400 (holding inmates have "a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates." (citation omitted)). In *Farmer*, the Supreme Court "held that a prison official violates the Eighth Amendment only when two requirements are met." 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'" meaning "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Id.* (citations omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial

23-12757                Opinion of the Court                9

risk of serious harm." *Id.* (citing *Helling v. McKinney,* 509 U.S. 25, 35 (1993)).

"The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (cleaned up) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson,* 501 U.S. at 297). "In prison-conditions cases[,] that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id.* (citations omitted). As the Supreme Court explained in *Farmer,* the test for deliberate indifference in this context is equivalent to subjective criminal recklessness: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837, 839–40; *see also Wade v. McDade,* 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" but nonetheless disregard it. *See Farmer,* 511 U.S. at 837. But "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted" because "[a] prison official's duty under the Eighth Amendment is to ensure 'reasonable safety[.]'" *Farmer,* 511 U.S. at 844–45 (internal quotation marks and citations omitted).

The "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983[.]" *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990), *cert. denied,* 496 U.S. 928 (1990) (citing *Davidson v. Cannon,* 474 U.S. 344, 347–48 (1986)). "'When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide *reasonable* protection.'" *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (emphasis added) (quoting *Hughes,* 894 F.2d at 1537).

Beaubrun argues that Warden Bowen and Counselor Bray violated his Eighth Amendment rights by moving him to A-3 without explanation and by failing to move him to a safer dorm after Beaubrun warned them of A-3's dangers. According to Beaubrun, if Warden Bowen and Counselor Bray had moved him to a safer dorm, he wouldn't have been attacked, and his Eighth Amendment rights wouldn't have been violated. As for Lieutenant Bray and Officer Bentley, Beaubrun argues the officers failed to intervene and protect him while he was actually being attacked in the daily room on June 12, 2022, and further failed to prevent two inmates from robbing him while he was in administrative segregation after the attack. We disagree.

Beaubrun hasn't stated a failure-to-protect claim because he didn't allege that the defendant had subjective knowledge of a risk of serious harm and failed to respond reasonably to that risk. *See Farmer,* 511 U.S. at 837–38. Instead, Beaubrun only alleged that he told Warden Bowen and Counselor Bray about the generalized

dangers in A-3 before the attack. But Beaubrun did not allege that he told Warden Bowen or Counselor Bray about any specific threat of violence against him from identified inmates that they knew about and ignored.

Beaubrun's allegations concerning Lieutenant Bray and Officer Bentley are similarly threadbare. As for the attack, Beaubrun alleged only that the officers saw an unnamed inmate beat him up in the daily room and didn't take any action to stop it. But as the magistrate judge's report noted, Beaubrun did not allege facts about the officers' proximity to the attack, name the attacker, describe the attack in any detail, nor offer any allegations supporting the inference that the officers could have reasonably intervened without risking their own health and safety. *See Farmer*, 511 U.S. at 837–38, 844; *McCoy*, 47 F.3d at 407 ("[E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.'"). Finally, as for the alleged theft of $67,000 by two inmates from his bank account, Beaubrun failed to allege that the officers knew about this risk, failed to allege how that risk related to his health or safety, and failed to allege how the officers could have prevented it. *Farmer,* 511 U.S. at 837–38.

In sum, without more specific allegations, we cannot say that the defendants "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety" as is required to state the deliberate-indifference element of a failure-to-protect claim. *See id*. The district court therefore did not err in dismissing the failure-to-protect claims.

*The deliberate-indifference-to-medical-needs claims*

Beaubrun next challenges the district court's dismissal of his claims that Lieutenant Bray and Officer Bentley were deliberately indifferent to his serious medical needs after the attack. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted). To state a claim that a prison official acted with deliberate indifference to a serious medical need, a plaintiff must plead both an objective element and a subjective element. *See Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

As to the objective element, a plaintiff must allege facts supporting the inference that he suffered an "objectively, sufficiently serious" deprivation. *See Wade*, 106 F.4th at 1262 (internal quotation marks omitted) (citing *Farmer*, 511 U.S. at 834). An "'objectively serious medical need,' [is] 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' and, in either instance, 'one that, if left unattended, poses a substantial risk of serious harm.'" *Hoffer*, 973 F.3d at 1270 (quoting *Farrow*, 320 F.3d at 1243).

As to the subjective element, a plaintiff must plead facts supporting the inference that the defendant "acted with subjective recklessness as used in the criminal law," which means "that the

defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *See Wade*, 106 F.4th at 1262 (internal quotation marks omitted) (citing *Farmer*, 511 U.S. at 839). But "even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to the risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 844–45); *see also Estelle*, 429 U.S. at 107 (reasoning that a matter of medical judgment does not represent cruel and unusual punishment).

Beaubrun argues that Lieutenant Bray and Officer Bentley were deliberately indifferent to his serious medical needs because they "actively withheld him" from getting medical treatment for the "serious injuries" that he sustained in the attack. We again disagree.

Beaubrun has failed to allege sufficient facts to satisfy both the objective and subjective elements of his deliberate-indifference-to-medical-needs claim. As for the objective element, Beaubrun alleged little detail about his injuries, failing to provide sufficient allegations to support the inference that his injuries were so obvious that "even a lay person would easily recognize the necessity for a doctor's attention,' and 'one that, if left unattended, pose[d] a substantial risk of serious harm.'" *Hoffer*, 973 F.3d at 1270 (quoting *Farrow*, 320 F.3d at 1243).

As for the subjective element, Beaubrun's own allegations confirm that neither officer was deliberately indifferent to his

serious medical needs.  In his complaint, Beaubrun alleged that the officers took him to the Dodge medical department immediately after the attack.  Beaubrun also alleged that, although the medical department was not immediately able to treat him because of a staff shortage, he was later called out of administrative segregation, seen by the Dodge medical staff, and prescribed ibuprofen for his injuries.  In other words, Beaubrun has alleged that Lieutenant Bray and Officer Bentley were *not* deliberately indifferent to his medical needs:  they took him straight to the medical department after the attack, and a staffing shortage in the medical department prevented him from being treated immediately.  *See Wade*, 106 F.4th at 1262 (requiring a defendant to have been "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff" and negating liability where defendant responded reasonably to the risk).  Thus, the district court did not err in determining that Beaubrun's complaint failed to state a claim against the officers for deliberate indifference to his serious medical needs.

### The procedural-due-process claims

Third, Beaubrun challenges the district court's dismissal of his claims that Dodge staff violated his procedural due process rights by administratively segregating him in one-hundred-degree temperatures and transferring him to Riverbend for filing a grievance.  The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. XIV, § 1.  A

prisoner's liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create such an interest. *See Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

The Supreme Court has held that placement in segregated conditions of confinement without due process can implicate a protected liberty interest giving rise to a procedural due process claim under two circumstances: first, where the placement "will inevitably affect the duration of [the inmate's] sentence"; and second, where the placement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Conner,* 515 U.S. at 484, 486–87.

As for prison transfers, the Supreme Court has held that "[t]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Id.*

Beaubrun argues that his procedural due process rights were violated first when he was placed in administrative segregation for ten days, where he claims temperatures reached one-hundred degrees. And he contends that his due process rights were violated a second time when he was transferred from Dodge to Riverbend in retaliation for filing a grievance.

Beaubrun's claim that his ten-day administrative segregation violated his right to procedural due process fails because he has not alleged that it affected his sentence's duration nor that it "imposed atypical and significant hardship on him related to the ordinary incidents of prison life." *See Conner*, 515 U.S. at 484, 486–87. While the Supreme Court has said that "prisoners do not shed all constitutional rights at the prison gate," it has also made clear that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *See Conner*, 515 U.S. at 465 (cleaned up). Other than his general allegation that temperatures in administrative segregation reached one-hundred degrees, Beaubrun has not alleged how these conditions deviated from the conditions in the general prison population and were thus atypical at Dodge, how they imposed significant hardship as compared with life in the general population at Dodge, or that the length of his sentence increased as a result of his ten-day administrative segregation. *See Conner*, 515 U.S. at 486 (holding prisoner's placement in segregated confinement had not presented the type of atypical, significant deprivation in which a state might create a liberty interest because the conditions mirrored those in the general population).

Finally, Beaubrun's claim that his transfer to Riverbend in retaliation for filing a grievance against Dodge staff fails because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at 225. In other words, Beaubrun did not have a protected liberty interest in being housed

at Dodge instead of Riverbend.  So, Beaubrun has failed to state a section 1983 claim for any violation of his procedural due process rights, and the district court properly dismissed both claims.

*The claims first raised on appeal*

Beaubrun last raises a grab-bag of new claims under the Fourth, Fifth, and Fourteenth Amendments not properly raised in the district court.  "[F]orfeiture is the failure to make the timely assertion of a right."  *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (internal quotation marks omitted) (quoting *Kontrick v. Ryan,* 540 U.S. 443, 458 n.13 (2004)).  "Generally, '[a]rguments raised for the first time on appeal are not properly before this Court.'"  *Waldron v. Spicher*, 954 F.3d 1297, 1304 (11th Cir. 2020) (quoting *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000)).

Beaubrun advances five untimely claims on appeal:  first, that the state of Georgia—a defendant not named in his complaint—violated his Fourteenth Amendment right to equal protection by treating him differently from inmates at Dodge who are in gangs; second, that Georgia violated his rights under Georgia law by wrongly convicting him; third, that Dodge's policy of not intervening during inmate-on-inmate abuse is unlawful; fourth, that Investigators Jackson and Watson—also not named as defendants in the complaint—illegally searched his property without probable cause while he was in administrative segregation; and fifth, that Georgia illegally "sold" him to Riverbend—a private prison—without his consent in violation of the Fifth Amendment.

Beaubrun forfeited these five new claims by failing to timely raise them before the district court.  As for the first four, Beaubrun raised these arguments for the first time in his initial appellate brief. And as to Beaubrun's last argument, that Georgia illegally "sold" him to a private prison without his consent, Beaubrun raised this argument for the first time in a motion for entry of default after the district court had already afforded him two opportunities to amend his complaint, and after the district court had made clear that it was only granting Beaubrun leave to amend his allegations as to Lieutenant Bray and Officer Bentley but not to add any new claims or defendants.  Not only did Beaubrun fail to follow the district court's instruction by attempting to add Georgia as a defendant and bring this new claim against it, he also forfeited the claim altogether by raising it in a motion for entry of default filed after he'd already twice amended his complaint.  We decline to exercise our discretion to consider it now on appeal.  *See Thomas v. Bryant*, 614 F.3d 1288, 1305–06 (11th Cir. 2010) (holding that the defendants waived any challenge to the district court's use of a particular legal standard when they raised the challenge for the first time in a motion filed after entry of the bench trial order); *Waldron*, 954 F.3d at 1304 (declining to address issue that district court declined to address because neither party raised it, and it would not alter outcome).

**AFFIRMED.**